OPINION
By the Court,
Leavitt, L:
Appellant was charged with first degree murder with the use of a deadly weapon. She asserted self-defense and claimed that she suffered from battered woman syndrome. An expert testified concerning the effects of the syndrome on a battered woman’s beliefs, behavior, and perceptions. The jury returned a guilty verdict of involuntary manslaughter with the use of a deadly weapon. Appellant was sentenced to the Nevada Department of Prisons for a minimum term of nineteen (19) months and a maximum term of forty-eight (48) months.

FACTS

Appellant Patricia Yvonne Boykins and the victim, Calvin Rochester Swazya were involved in a non-marital relationship for seven years and cohabited for six years. The couple constantly argued with resulting instances of verbal and physical abuse. Boykins testified that Swazya would beat her and “there were times when they [sic] were beatings ... he always hit me, but there were times that were worse than others.” She also testified that she knew, by Swazya’s expressions, when the argument would become violent. Boykins’ testimony was corroborated by other witnesses who testified regarding the violent nature of Boykins’ relationship with Swazya.
Boykins was a general manager of the Sagebrush Ranch, a licensed brothel, where Swazya was a custodian. The relationship between the parties deteriorated, Swazya requested an early paycheck and was preparing to leave. The couple argued about financial issues for several hours. One witness testified that he observed Boykins in a corner of her office with her hands raised to protect her face while Swazya was standing over her with his hand raised as if to slap her. Swazya appeared to be in a rage.
Boykins testified that she began loading a .357 revolver. When Swazya walked toward her, the gun discharged. Swazya was hit *173 above his left eyebrow and was fatally wounded. Boykins stated that the gun accidentally discharged while she was trying to load it.[1]
Although Boykins told the police and testified that the shooting was accidental, due to the physical evidence, an accidental discharge was considered unlikely by both the defense and prosecution experts. For this reason, accidental discharge was not the focus of the defense. Instead, counsel for Boykins argued that Boykins shot Swazya in self-defense and her insistence in describing the incident as an accident was a product of battered woman syndrome. Evidence was presented that women who suffer from battered woman syndrome often claim they accidentally killed their batterer.
The jury convicted Boykins of involuntary manslaughter with the use of a deadly weapon.[2] The trial judge sentenced Boykins to the Nevada State Prison for a minimum of nineteen (19) months and a maximum term of forty-eight (48) months without any enhancement.

DISCUSSION

Boykins offered the following jury instruction:
Evidence of battered womens [sic] syndrome can be considered by you, the jury, for the following purposesf:]
(1) To determine whether the defendant actually believed that she needed to use deadly force.
(2) To determine whether, due to battered womens [sic] syndrome, her belief was reasonable, and
(3) To assist in determining the credibility of the defendant’s testimony.
The district court declined to give this instruction, finding that there were other instructions, specifically Instruction 34, that adequately advised the jury on the effects of domestic violence to a claim of self-defense pursuant to NRS 48.061 and 200.200.
Boykins claims that the failure to give the instruction deprived her of a fair trial. “A defendant in a criminal case is entitled, upon request, to a jury instruction on his or her theory of the *174 case, so long as there is some evidence, no matter how weak or incredible, to support it.” Williams v. State, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983). Boykins asserts that the offered instruction was necessary to eliminate confusion created by other instructions. Boykins argues that Instruction 34 did not make it clear to the jury that evidence regarding battered woman syndrome could be' considered in evaluating whether a reasonable person under the circumstances (i.e., suffering from battered woman syndrome) would believe that she was in imminent fear of her life or great bodily injury. Boykins also contends that Instruction 34 did not address the effect of the syndrome on her state of mind at the time of the shooting and her claim that the shooting was accidental despite physical evidence to the contrary. We agree.
Dr. Lenore E. A. Walker[3] testified as an expert witness for Boykins. “Dr. Walker [has defined] a battered woman as ‘one who is repeatedly subjected to any forceful physical or psychological behavior by a man in order to coerce her to do something he wants her to do without any concern for her rights.’ ” Ann-Marie Montgomery, Note, State v. Riker, Battered Women under duress: The concept the Washington Supreme Court could not grasp, 19 Seattle U. L. Rev. 385, 391 (1996) (quoting Lenore E. Walker, The Battered Woman 15 (1980)). Dr. Walker testified that the abuse must occur twice before a woman can be considered a battered woman. The district court allowed her great latitude in describing aspects of the battered woman syndrome including the interaction between the “learned helplessness” and a process called the “three phases of violence” (the cycle theory).[4] Dr. Walker’s three phases of violence theory has been described as follows:
This theory describes three distinct phases to a battering relationship. In phase one, the tension building phase, the batterer indulges in psychological torture of the woman. This torture is followed by phase two, an “acute battering incident,” in which the inevitable tension that has built up results in an uncontrollable discharge of violence. In phase three, the batterer expresses “loving contrition” by apologizing profusely and showing kindness and remorse. It is this third phase that is the most troublesome because the batterer’s *175 behavior provides the woman with positive reinforcement for staying in the relationship.
This positive reinforcement leads battered women to experience a sense of learned helplessness. The theory of learned helplessness explains the counter-intuitive nature of the battered woman’s responses to the incessant abuse she suffers
When a woman realizes that her behavior bears no relationship to the violence she receives, she develops “survival or coping skills that keep [her] alive with minimal injuries.” For example, many battered women become passive after an abusive incident. These coping skills are developed at the expense of escaping skills, which may include anger and active behavior, skills that would enable the battered woman to leave the relationship.
The synergistic effects of the cycles of violence and learned helplessness are profound. A symptom of these effects is hypervigilance, a symptom that all battered women share. Battered women are hypervigilant to cues of potential danger and are acutely aware of their surroundings. To a battered woman, otherwise insignificant, behaviors such as an eye twitch, a particular tone of voice, or a certain movement are all things that may signal an impending attack by a male.
Montgomery, supra, at 392-94 (footnotes omitted) (quoting Lenore E. A. Walker, Battered Women Syndrome and Self-Defense, 6 Notre Dame J.L. Ethics and Pub. Pol’y 321, 326 (1992) & Lenore E. Walker, The Battered Woman Syndrome (1984)).
Several state courts have accepted evidence of battered woman syndrome:
[[S]eventy-six] percent of the states [thirty-nine] have found expert testimony on battering and its effects admissible to prove the defendant is a battered woman or “suffers from battered woman syndrome.” Nearly as many, [thirty-five] states [sixty-nine percent] have found “generic” expert testimony admissible, i.e., to explain battering and its effects generally.
Janet Parrish, Trend analysis: Expert testimony on battering and its effects in criminal cases, 11 Wis. Women’s L.J. 75, 117-18 (1996) (footnote omitted).
The Nevada Legislature recognized the theory in NRS 48.061 as follows:
Evidence of domestic violence as defined in NRS 33.018 and expert testimony concerning the effect of domestic vio *176 lence on the beliefs, behavior and perception of the person alleging the domestic violence is admissible in chief and in rebuttal, when determining:
1. Whether a person is excepted from criminal liability pursuant to subsection 7 of NRS 194.010,[5] to show the state of mind of the defendant.
2. Whether a person in accordance with NRS 200.200[6] has killed another in self-defense, toward the establishment of the legal defense.
Under Nevada law, the effect of domestic violence on ‘ ‘beliefs, behavior, and perception” of a defendant is admissible to “show the defendant’s state of mind.” However, battered woman syndrome is not a complete defense. The United States District Court for the District of Kansas explains:
[B]attered woman syndrome is not a defense. It is some evidence to be considered to support a defense, such as self-defense, duress, compulsion, and coercion. Because women who suffer from the battered woman syndrome do not act in a typical manner as compared with women who do not suffer from it, evidence of the syndrome is used to explain their behavior. Evidence of [battered woman] syndrome is presented through expert testimony to assist the jury’s evaluation of the defendant’s state of mind.
U.S. v. Brown, 891 E Supp. 1501, 1505 (D. Kan. 1995) (citation omitted).
NRS 48.061 is modeled after Oklahoma’s Battered Woman Statute. See Hearing on A.B. 637 Before the Assembly Comm, on Judiciary, 67th Leg. (Nev., May 27, 1993), Exhibit E; Senate *177 Daily Journal, A.B. 637, at 27 (67th Leg. Nev., June 26, 1993). Oklahoma’s Statute located at § 40.7 of Title 22 contains the following: “In an action in a court of this state, if a party offers evidence of domestic abuse, testimony of an expert witness concerning the effects of such domestic abuse on the beliefs, behavior and perception of the person being abused shall be admissible as evidence.” After Oklahoma passed the Battered Woman Syndrome Statute, an Oklahoma court examined a newly revised jury instruction and stated that the jury instruction was consistent with the new statute. See Bechtel v. State, 840 P.2d 1,11 (Okla. Crim. App. 1992). The revised jury instruction contained the following:
A person is justified in using deadly force in self-defense if that person believed that use of deadly force was necessary to protect herself from imminent danger of death or great bodily harm. Self-defense is a defense although the danger to life or personal security may not have been real, if a person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that she was in imminent danger of death or great bodily harm.

Id.

The theory behind the use of evidence regarding domestic violence and the battered woman syndrome centers upon the state of mind of the individual who has been subjected to such violence. Self-defense is shown when a person, under the circumstances, reasonably believes she is in imminent danger of death or great bodily harm, even if no actual threat exists. Where the “circumstances” include domestic violence, the battered woman syndrome is relevant to the reasonableness of an individual’s belief that death or great bodily harm is imminent.
The district court gave a number of instructions to the jury that dealt with the concept of self-defense.[7] Of the twelve instructions involving issues of self-defense, only one, Instruction 34, discusses the relationship between domestic violence or the battered woman syndrome and Boykins’ claim of self-defense.
Instruction 34 did not properly encompass Boykins’ theory of the case. The instruction limits the consideration of the battered woman syndrome evidence to Boykins’ perceptions that Swazya’s conduct put her in imminent fear of her life or great bodily harm. It did not reflect that the syndrome could be used to evaluate Boykins’ state of mind at the time of the shooting and her claim that the shooting was an “accident.”
The failure to give an instruction regarding Boykins’ state of *178 mind was compounded by the wording of the eleven other instructions encompassing the law on self-defense. Many of the instructions did not contain any language that the reasonableness of a person’s belief must be considered under the circumstances that existed when the belief was formed. For example, Instruction 23 indicated that deadly force was only authorized when a person believes ‘ ‘with good reason’ ’ that such force is necessary to prevent great bodily harm. “Good reason” is not the equivalent of “good reason under the circumstances.” The lack of consistency amongst the various self-defense instructions together with the failure to give an instruction regarding the relationship between a person’s state of mind and the battered woman syndrome constitutes error. Although we are mindful of the fact, as pointed out by the dissent, that Boykins was not convicted of first degree murder, we cannot conclude that the failure to properly instruct the jury is harmless error.

CONCLUSION

The district court allowed evidence of the battered woman syndrome and correctly refused to allow the expert witness to testify on the ultimate issue that appellant was suffering from the syndrome. See Townsend v. State, 103 Nev. 113, 734 P.2d 705 (1987). However, the trial court failed to properly instruct the jury on Boykins’ theory that battered woman syndrome should be considered by the jury not only as to the reasonableness of Boykins’ conduct, but as to her state of mind at the time of the shooting. Therefore, the case must be reversed and remanded for a new trial. At the new trial, the court should give the following instruction:
You have heard expert testimony concerning the effect of domestic violence on the beliefs, behavior, and perception of a woman who may be suffering from battered woman syndrome. The defendant asserts that she was suffering from battered woman syndrome at the time of the killing. This, in itself, is not a legal defense. However, if you believe that the defendant was suffering from battered woman syndrome, you may consider such evidence when determining the defendant’s state of mind at the time of the killing and whether she acted in self-defense. You may also consider such evidence as to the defendant’s credibility and the reasonableness of her belief that she was about to suffer imminent death or great bodily harm and the need to slay an aggressor.
By reason of the foregoing, the case is reversed and remanded for a new trial in accordance with the views expressed herein.
*179 Rose, C. J., Maupin, Shearing, Agosti and Becker, JJ , concur.

Evidence was presented that due to the model of the revolver, in order to load the gun and close the cylinder, the gun would have to be pointing down toward the floor.

The State filed a motion to correct sentence as to the deadly weapon enhancement. We have held that the deadly weapon enhancement does not apply to the unintentional crime of involuntary manslaughter. Buschauer v. State, 106 Nev. 890, 895-96, 804 P.2d 1046, 1049 (1990).

Dr. Walker is a psychologist who has done extensive research on battered woman syndrome. She has published several articles and books on the subject, and she has testified as an expert on battered woman syndrome in thirty-five states, five federal courts, and a court in Greece.

Dr. Walker indicated learned helplessness occurs when a battered woman is unable to control her batterer’s abuse.

5NRS 194.010 provides in pertinent part as follows:
All persons are liable to punishment except those belonging to the following classes:
7. Persons, unless the crime is punishable with death, who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to believe, and did believe, their lives would be endangered if they refused, or that they would suffer great bodily harm.

6NRS 200.200 states as follows:
If a person kills another in self-defense, it must appear that:
1. The danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and
2. The person killed was the assailant, or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given.

Instructions 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34 and 36 all involved self-defense and the concept of what constitutes a reasonable belief that death or great bodily injury is imminent.