*443
 
 OPINION
 

 Per Curiam:
 

 During the course of an argument in their Reno mobile home, Cheryl Ann Walker (“Cheryl”) shot and killed her husband Anthony Walker (“Anthony”). At Cheryl’s trial for first-degree murder, Anthony’s son was allowed to testify during the State’s rebuttal that Cheryl had twice before threatened Anthony with a firearm. However, these events occurred six and ten years prior to Anthony’s death and did not involve Cheryl’s firing or attempting to fire the weapon at Anthony. At issue here is whether the evidence of these prior bad acts was properly admitted. We conclude that the district court erred in admitting the prior bad act evidence and remand for a new trial.
 

 FACTS
 

 In the early morning hours of September 19, 1997, Cheryl and her husband Anthony were heard arguing outside of their mobile home in Reno. Eventually, they proceeded inside, and their argument continued. At around 1:30 a.m., a gunshot was heard, and the argument ended.
 

 Cheryl fled the scene and eventually went to a local bar. There, she did not appear drunk or upset, but did tell the bartender that she had been arguing that night with her husband about money. Cheryl told the bartender that she had waited until Anthony fell asleep, taken some money, and left.
 

 The next morning, the bartender received a phone call from Cheryl, who was now quite upset and told him that she had just found her husband lying dead on the floor of their trailer. Cheryl then called the police. An autopsy revealed that Anthony died of a shotgun wound to the head.
 

 At first, Cheryl maintained that she had not killed Anthony, but had left the trailer at around 9:30 p.m. to spend the night with a friend after arguing with Anthony. However, in a videotaped interview given with Cheryl’s consent later that day, Cheryl retracted her earlier testimony and confessed to her personal involvement with the murder.
 

 In the interview, Cheryl made the following statements regarding the shooting. After returning to the trailer later that evening, Cheryl and Anthony continued their earlier argument. Inside the trailer, Anthony began striking Cheryl, but she was able to get away. As the argument continued, Anthony, who was now sitting down, began to reach for a flare gun, which was capable of firing shotgun shells and was lying on a nearby table. Cheryl, how
 
 *444
 
 ever, grabbed the flare gun, yelled for Anthony to get out, and stated that she had been kicked out for the last time. Anthony responded that she had better kill him or he would kill her. Cheryl then threatened, “Look, I’m gonna count to ten, and you better fucking leave or I’ll shoot you.” After Anthony moved forward toward her, Cheryl fired the gun, killing Anthony. After realizing what she had done, Cheryl fled in her truck and at some point threw the flare gun out of the vehicle.
 

 When asked by the police if she had acted in self-defense, Cheryl stated that she did not know and just thought that Anthony was going to reach for the gun and kill her. Cheryl also stated that she did not realize she had pulled the trigger.
 

 At Cheryl’s trial for first-degree murder in June 1998, and at the end of the State’s case-in-chief, the court conducted a brief
 
 Petrocelli
 
 hearing outside of the jury’s presence to determine whether the State could introduce certain evidence of Cheryl’s prior bad acts. One of the State’s proffered witnesses was Anthony Christopher Walker, Jr. (“Anthony Jr.”), Anthony’s nineteen-year-old son, who testified that he had seen Cheryl threaten to kill Anthony on two separate occasions.
 

 The first incident was approximately ten years before Anthony’s death and occurred at a picnic that Anthony Jr. was attending with Cheryl and Anthony.
 
 [1]
 
 Cheryl had slapped Anthony Jr. for not eating all of his food, which in turn angered Anthony. In response, Cheryl retrieved a pistol from their truck, pointed it directly at Anthony from about two feet away, and said, to the best of Anthony Jr.’s recollection, that she would kill Anthony.
 

 The second incident occurred six years earlier and involved a disagreement between Cheryl and Anthony about Anthony’s disciplining of Cheryl’s youngest son.
 
 [2]
 
 Cheryl became angry and pointed a rifle at Anthony, who was sitting on a couch, and said not to come closer or she would shoot and that she wanted money to give to her kids.
 

 After noting that the State had met its initial burden of showing the witness’s reliability by clear and convincing evidence, the district court ruled that the evidence was admissible “once the issue of self-defense and lack of intent and the common course of conduct between these two people become at issue.” Further, the
 
 *445
 
 district court stated that the prior acts were not so tenuous in age to preclude admission.
 

 Cheryl then presented her defense. Cheryl offered testimony from witnesses who had previously seen Anthony hit Cheryl or who had noticed injuries to Cheryl that suggested abuse. Additionally, Cheryl offered expert testimony that she was suffering from battered woman syndrome at the time she shot Anthony, a condition that occurs after a spouse is subjected to continuous psychological or physical abuse and that may lead an abused spouse to perceive imminent danger or death even if no actual threat exists. After the expert testified, Cheryl elected not to testify and the defense rested.
 

 For its rebuttal case, in addition to Anthony Jr.’s aforementioned testimony, the State presented testimony from a neighbor that Cheryl had struck Anthony on several occasions. The State also called its own psychiatrist to testify that he disagreed with Cheryl’s expert’s conclusion regarding battered woman syndrome, noting that the condition was not recognized in the psychiatric community as a treatable disease.
 

 On the charge of first-degree murder, the jury found Cheryl guilty. She was then sentenced to a term of fifty years in the Nevada State Prison with a consecutive fifty-year sentence for the use of a deadly weapon. Cheryl now appeals on the grounds that Anthony Jr.’s testimony was improperly admitted.
 

 DISCUSSION
 

 Cheryl contends that the district court erred in admitting Anthony Jr.’s rebuttal testimony that Cheryl had twice threatened Anthony in the past with a firearm.
 
 [3]
 
 Specifically, Cheryl argues that the testimony was not relevant to Cheryl’s intent at the time of the murder and constituted inadmissible evidence of Cheryl’s prior bad acts that was more prejudicial than probative. We agree.
 

 We have often stated that the use of uncharged bad acts to convict a defendant is heavily disfavored in our criminal justice system, because such bad acts are often irrelevant or prejudicial and force the accused to defend against vague and unsubstantiated charges.
 
 See
 
 Berner v. State, 104 Nev. 695, 696-97, 765 P.2d 1144, 1145-46 (1988). The principal concern with admitting such acts is that the jury will be unduly influenced by the evidence, and thus convict the accused because the jury believes the accused is a bad person.
 
 See id.
 

 
 *446
 
 However, in certain instances, admission of prior bad acts is appropriate. At issue here is whether NRS 48.045(2), which outlines several exceptions to the general rule of exclusion, was properly applied to admit the evidence of Cheryl’s prior bad acts. NRS 48.045(2) provides:
 

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.
 
 It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 (Emphasis added.)
 

 A trial court deciding whether to admit such acts must conduct a hearing on the matter outside the presence of the jury and on the record.
 
 See
 
 Petrocelli v. State, 101 Nev. 46, 51-52, 692 P.2d 503, 507-08 (1985) (outlining procedure for admitting prior bad acts); Armstrong v. State, 110 Nev. 1322, 1323-24, 885 P.2d 600, 601 (1994) (requiring that district court finding be made on the record). At the hearing, the court must determine whether “(1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.” Tinch v. State, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997). The trial court’s determination of whether to admit or exclude such evidence will not be disturbed on appeal absent manifest error.
 
 See Petrocelli,
 
 101 Nev. at 52, 692 P.2d at 508.
 

 In this case, Anthony Jr. testified to two prior events involving Cheryl’s pointing of a firearm at Anthony. The first incident was approximately ten years before Anthony’s death and occurred at a picnic Cheryl and Anthony were attending. After getting into an argument, Cheryl pointed a pistol at Anthony and threatened to kill him. The second incident occurred approximately six years before Anthony’s death and involved another argument between Cheryl and Anthony. As a result, Cheryl became angry and pointed a rifle at Anthony, telling him not to come closer and that she wanted money for her kids. Although the State argues that these acts were relevant to showing Cheryl’s “true intent” at the time she shot Anthony, we conclude that they were improperly admitted under NRS 48.045(2).
 

 
 *447
 
 First, in evaluating the relevance of prior bad acts to the crime charged, we have consistently noted that events remote in time from the charged incident have less relevance in proving later intent.
 
 See, e.g.,
 
 Beck v. State, 105 Nev. 910, 912, 784 P.2d 983, 984 (1989); Berner v. State, 104 Nev. 695, 697-98, 765 P.2d 1144, 1146 (1988). We conclude that the events here, which are six and ten years old, are clearly remote in time, and thus are less relevant to Cheryl’s intent at the time she shot Anthony.
 

 Further, although the prior bad acts involve similar conduct toward the eventual victim in this case, we conclude that there is a crucial distinction between Cheryl’s prior conduct and the charged conduct. Namely, Cheryl’s prior acts do not involve the firing or attempted firing of the weapon at Anthony. Importantly, Cheryl was tried for first-degree murder, a specific intent crime requiring, in addition to premeditation and deliberation, willful action that we have said requires an intent to kill.
 
 See
 
 Byford v. State, 116 Nev. 215, 994 P.2d 700 (2000). Therefore, because the prior bad acts offered here do not clearly establish an intent to kill, but more accurately show an intent to threaten, the logical relevance of the acts to show Cheryl’s later intent is further diminished.
 

 Accordingly, we conclude that the two prior bad acts offered by Anthony Jr. have only minimal relevance to Cheryl’s intent at the time she shot Anthony.
 

 Next, in evaluating whether the probative value of the evidence is substantially outweighed by the danger of prejudice, we reiterate that evidence of prior bad acts may unduly influence the jury and result in a conviction based on the accused’s propensity to commit a crime rather than on the State’s ability to prove all the elements of the crime.
 
 See Berner,
 
 104 Nev. at 696-97, 765 P.2d at 1145-46. The acts here, Cheryl’s twice pointing a gun at Anthony during an argument, clearly cast Cheryl in a negative light, prejudicially suggesting that she has a dangerous and criminal character. We therefore conclude that the danger of prejudice substantially outweighs the probative value of the prior acts.
 

 Accordingly, we conclude that the district court erred by admitting the evidence of Cheryl’s prior bad acts.
 

 CONCLUSION
 

 Based on our conclusions that the prior acts were only minimally relevant to Cheryl’s later intent and that the danger of prejudice substantially outweighs the probative value of the prior acts, we hold that the district court’s admission of Anthony Jr.’s testi
 
 *448
 
 mony was manifest error. Further, because the shooting occurred during a heated argument in the course of an abusive and tumultuous relationship and because a conviction of first-degree murder requires proof beyond a reasonable doubt of willfulness, premeditation and deliberation, we cannot say that the error here was harmless beyond a reasonable doubt. We therefore reverse the judgment of conviction and remand for a new trial in accordance with the views expressed herein.
 
 [4]
 

 [1]
 

 Anthony Jr. testified that this first incident occurred eleven years before trial. Taking into account the nine months between Anthony’s murder and trial, the relevant age of the incident is roughly ten years.
 

 [2]
 

 Similar to the first incident, Anthony Jr. testified that the second incident occurred seven years before trial. Taking into account the nine months between Anthony’s murder and trial, the relevant age of the incident is roughly six years.
 

 [3]
 

 Cheryl asserts numerous other contentions on appeal, including that the district court’s instructions on the elements of first-degree murder and on the reasonable doubt standard were improper. Because we conclude that the admission of Anthony Jr.’s testimony regarding Cheryl’s prior bad acts is reversible error, we need not and do not reach these other issues.
 

 [4]
 

 On remand, we note that the jury instructions outlined in our recent decisions in Byford v. State, 116 Nev. 215, 994 P.2d 700 (2000) and Boykins v. State, 116 Nev. 171, 995 P.2d 474 (2000) should be applied.