TABITHA LA DALE MORRIS, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 25220

April 3, 1996                                    913 P.2d 1264

[Rehearing denied September 10, 1996]

*Buttell & Percival, Ltd.*, Las Vegas, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Stewart L. Bell*, District Attorney, *James Tufteland*, Chief Deputy District Attorney, *Lisa Luzaich*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ROSE, J:

Appellant Tabitha La Dale Morris was charged with second degree murder with the use of a deadly weapon and illegal discharge of a firearm after she allegedly drove past the house belonging to Gloria Fox and fired approximately fifteen shots in the direction of the house, killing Gloria's sister Louise Potter. At trial, the prosecutor twice made reference to the fact that after Morris had been arrested she refused to speak to the police and requested to speak to her attorney. The jury convicted Morris of both crimes.

We conclude that the prosecutor's references to Tabitha's post-arrest requests to remain silent and to speak to her attorney amounted to prosecutorial misconduct, and we reverse the conviction and remand the case to the district court for a new trial.

### FACTS

On August 25, 1990, Tabitha went to a beauty salon in North Las Vegas to get her hair done. Upon exiting the salon, Karsha Fox and approximately seven or eight of her friends confronted Tabitha, alleging that Tabitha had cut the hair of Karsha's young son, Keyo. There was bad blood between Karsha and Tabitha because Tabitha was the present girlfriend of Kelvin Owens, and Kelvin and Karsha had previously been involved and had two children together, one of which was Keyo. Tabitha said that she did not cut Keyo's hair. Karsha then hit Tabitha in the back with a stick, Tabitha hit Karsha with a picture frame, and a fight ensued. Karsha's mother, Gloria Fox, and Karsha's aunt, Louise Potter, were also at the salon and along with several other people broke up the fight.

After the fight broke up, the parties left the salon parking lot. Karsha, Gloria, Louise, and all of Karsha's friends went to Gloria's house, and Tabitha apparently went to her house which was only a block or two from Gloria's. Everyone at Gloria's home was discussing the fight and making a lot of noise. Keyo, who was at Gloria's home, began to cry, and Louise offered to take Keyo to her house to get him away from all of the noise. Gloria walked them to the front door and watched from her doorstep as Louise put Keyo in the back seat of the car. At that time, a car drove by the house and Tabitha allegedly leaned out of the passenger-side window and fired approximately fifteen bullets. Louise was struck in the head and was killed, and Keyo was grazed in the arm and received twelve stitches.

When the police arrived, both Gloria and Laneatra Holt, a neighbor who lived across the street, identified Tabitha as the shooter, and Officer Edward Dubrutz went to Tabitha's house, which was about one block away. When Dubrutz arrived, Tabitha was crying on the couch, and Dubrutz testified that she told him that "people were saying that she had a gun, but she does not own a gun and does not even [know] how to shoot a gun." Dubrutz arrested Tabitha, but he did not read the *Miranda* rights to her.

After Tabitha was arrested, she was taken to the North Las Vegas jail. After Tabitha was booked but still while she had not been read her *Miranda* rights, Detective Edward Brown requested that she be transported from the jail to his office at the detective bureau. When Tabitha arrived, Brown asked Tabitha, "Would you like to speak with me?" Tabitha said, "No. I want to speak to Mike."[1] Brown had been told previously by another officer that "Mike" was Tabitha's attorney, and he therefore ceased the interview and had Tabitha taken back to jail.

---

[1] Outside of the presence of the jury, Brown explained why he did not advise Tabitha of her *Miranda* rights before asking her the question, stating that:

I WAS INFORMED BY THE TRANSPORTING OFFICER THAT SHE WAS VERY UPSET, VERY AGITATED AND VERY UNCOOPERATIVE.

I FELT IT WAS VERY REDUNDANT TO SIT THERE AND READ HER ENTIRE RIGHTS AND BE TOLD NO. I WAS ASKING HER, "DO YOU WISH TO SPEAK TO ME?"

IF SHE HAD [SAID], "YES," I WOULD HAVE SAT HER DOWN, I WOULD HAVE TAKEN OUT THE STANDARD MIRANDA FORMS THE POLICE DEPARTMENT USES WHICH COMPLETELY ADVISES HER OF HER RIGHTS, [HAD] HER SIGN THAT ACKNOWLEDGEMENT, [HAD] HER SIGN THAT SHE ACKNOWLEDGES AND READS HER RIGHTS, THE ENGLISH LANGUAGE, AND I HAD VERBALLY EXPLAINED THEM TO HER.

THEN I WOULD HAVE QUESTIONED HER, BUT THEN SHE INVOKED HER RIGHTS. ALL CONVERSATIONS ENDED, AND NONE EVER EXISTED SINCE.

At trial, during the prosecution's case in chief, the prosecutor called Brown to the stand and attempted to question him as to what Tabitha had said to him at the detective bureau. Tabitha's counsel objected on the basis that such questioning was an improper comment on Tabitha's post-arrest silence. The prosecutor stated that there was no violation of Tabitha's rights because this was a comment on Tabitha's pre-*Miranda* silence, not post-*Miranda* silence. The judge overruled the objection and allowed Brown to state that Tabitha had refused to speak to him and requested to speak to her attorney.

During closing arguments, the prosecutor again made reference to Tabitha's post-arrest silence, implying that she was hiding something from the police. The prosecutor stated:

> MISS MORRIS KNEW WHAT SHE WAS DOING. SHE KNEW WHAT SHE WAS DOING FROM STEP 1 THROUGH THE VERY END, AND SHE FOLLOWED IT UP. OFFICER DUBRUTZ ARRIVED AT HER HOUSE RIGHT AFTER THE SHOOTING, AND WHAT DID SHE SAY?
> "THEY SAID I HAD A GUN. I DON'T KNOW NOTHING ABOUT SHOOTING NO GUN."
> SHE KNEW WHAT SHE WAS DOING. THE STATEMENT TO DETECTIVE BROWN WHEN SHE GOT TO JAIL WAS: "I WANT TO TALK—"

Tabitha's counsel again objected to this comment on Tabitha's post-arrest silence and was again overruled.

At the close of trial, Tabitha was convicted of second degree murder with the use of a deadly weapon and illegal discharge of a firearm. She received a life sentence with the possibility of parole for the murder charge and a consecutive life sentence for the weapon enhancement and also received a concurrent three year sentence for the illegal discharge of a firearm charge.

## DISCUSSION

We conclude that the prosecutor engaged in misconduct by commenting on Tabitha's post-arrest silence. "It is well settled that the prosecution is forbidden at trial to comment upon an accused's election to remain silent following his arrest and after he has been advised of his rights as required by Miranda v. Arizona . . . ." McGee v. State, 102 Nev. 458, 461, 725 P.2d 1215, 1217 (1986). This court expanded this doctrine by concluding that a prosecutor also cannot use post-arrest, pre-*Miranda* silence to impeach a defendant. Coleman v. State, 111 Nev. 657, 895 P.2d 653 (1995). While the instant case concerns the prosecutor's use of post-arrest, pre-*Miranda* silence in its

case in chief, and not for impeachment, the rationale of *Coleman* still applies and bars the prosecution's comments.

This court advanced three policy considerations in support of *Coleman:* (1) the privilege against self-incrimination precludes reference to an arrestee's silence; therefore, the right to remain silent does not arise solely from the express assurances contained in the *Miranda* warning; (2) the *Miranda* warning has been widely publicized through the media, and therefore many people have personal knowledge of these rights; and (3) refusing to draw a line between post-arrest, post-*Miranda* silence and post-arrest, pre-*Miranda* silence forecloses any inducement to police to engage in the gamesmanship of not asking any questions immediately after the arrest in order to use the defendant's silence against him or her, but later giving a *Miranda* warning in order to secure a statement. *Id.* at 663, 895 P.2d at 657.

These policies apply equally, if not more so, to barring a prosecutor from commenting on a defendant's post-arrest silence during the State's case in chief. Allowing such comments in the prosecution's case in chief greatly prejudices the defendant because it then puts pressure on the defendant to testify in order to explain the silence, thereby pressuring the defendant to abrogate his or her privilege against self-incrimination. Therefore, prosecutorial comments on the defendant's post-arrest silence made during the prosecution's case in chief are equally or more damaging than if made during impeachment, and the *Coleman* holding should be extended to preclude such comment.

This court has stated that reversal will not be required if the prosecutor's references to the defendant's post-arrest silence are harmless beyond a reasonable doubt. Murray v. State, 105 Nev. 579, 584, 781 P.2d 288, 290 (1989). Comments on the defendant's post-arrest silence will be harmless beyond a reasonable doubt if (1) at trial there was only a mere passing reference, without more, to an accused's post-arrest silence (*McGee,* 102 Nev. at 461, 725 P.2d at 1217), or (2) there is overwhelming evidence of guilt (Moore v. State, 96 Nev. 220, 225, 607 P.2d 105 (1980)). In this case we conclude that there was more than a passing reference to Tabitha's post-arrest silence and that there was not overwhelming evidence of guilt.

At trial, the prosecution twice made reference to Tabitha's post-arrest silence, once in its case in chief and once during closing arguments. While only two references were made, both were protracted given the fact that Tabitha's counsel objected and the attorneys debated whether the references were proper.

Additionally, the prosecutor's closing argument implied that by making the statements to Officer Dubrutz, by refusing to talk to the police, and by requesting to speak with Mike, her attorney, Tabitha had something to hide. "[D]ue process prohibits any inference to be drawn from the exercise of one's constitutional right to remain silent after arrest." Vipperman v. State, 92 Nev. 213, 216, 547 P.2d 682, 684 (1976). Therefore, the references made to Tabitha's silence were not "merely passing," but rather were deliberate and drew inferences of guilt.

Furthermore, we conclude that there was not overwhelming evidence of Tabitha's guilt adduced at trial. Tabitha denied shooting Louise Potter, and the only other witnesses to the crime were Gloria Fox and Laneatra Holt. Both witnesses identified Tabitha as the shooter, but both witnesses also admitted that they did not get a clear look at the shooter. Additionally, both witnesses gave conflicting stories as to the number, color, and model of cars involved in the shooting. These conflicting stories cast doubt on the certainty that Tabitha was the shooter and negate any claim that there was overwhelming evidence of Tabitha'a guilt.

## CONCLUSION

We conclude that the prosecutor's comments during the State's case in chief and closing arguments referring to Tabitha's post-arrest silence amounted to prosecutorial misconduct. Furthermore, because the prosecutor made more than a passing reference to Tabitha's post-arrest silence and because overwhelming evidence of Tabitha's guilt was not adduced at trial, we conclude that the comments were not harmless error. Accordingly we reverse Tabitha's conviction and remand this matter to the district court for a new trial.

YOUNG, SPRINGER and SHEARING, JJ., concur.

STEFFEN, C. J., dissenting:

Respectfully I dissent.

Although the prosecution introduced evidence of Tabitha's post-arrest/pre-warning silence during its case-in-chief, I believe the basic rationale for my dissent in Coleman applies in the instant case. I view the majority's position to be an unwarranted impediment to the search for truth in a criminal trial. I therefore dissent and would have affirmed the judgment entered below.