ELWIN RAY GORDON, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 42760

August 11, 2005

117 P.3d 214

*John E. Oakes,* Reno, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Noel S. Waters,* District Attorney, and *Thomas R. Armstrong,* Deputy District Attorney, Carson City, for Respondent.

Before MAUPIN, DOUGLAS and PARRAGUIRRE, JJ.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal, we consider whether a jury may return a general guilty verdict based upon several legally sufficient theories of driving under the influence if at least one theory had sufficient ev-

identiary support. We conclude that it may. We also consider whether the appellant was prejudiced by the State's failure to gather evidence during its investigation. We conclude that he was not prejudiced.

## FACTS

Appellant Elwin Ray Gordon was charged with driving under the influence causing substantial bodily harm after his vehicle collided with a motorcycle, injuring the motorcyclist.[1] The collision occurred in June 2002. At the scene, the investigating deputies, who were trainees, noted that Gordon's eyes were bloodshot and watery, his breath smelled of alcohol, and his speech was mildly slurred. Gordon submitted to a horizontal gaze nystagmus field test, which he failed by exhibiting six out of a possible six indicators suggesting possible impairment. Gordon was then arrested. A subsequent single blood draw yielded a blood alcohol concentration (BAC) of 0.10.

At trial, a toxicology expert for the State acknowledged that factoring in variance could lower the actual BAC value to 0.099 and the chances of that were "fifty-fifty." A clinical chemist testified that a BAC of 0.10 would have a noticeable effect on an average nonalcoholic person's abilities, including their reaction times and cognitive functions. He also opined that at 0.10 all persons would experience measurable effects. Gordon testified that he had consumed 6½ beers on the evening of the accident.

The district court admitted a number of photographs of the scene taken after the accident. Based on these, one of the investigating officers acknowledged on cross-examination that there were inaccurate measurements and omissions in his accident reconstruction diagram, which also did not include point-of-impact debris, coefficient of friction, yaw patterns, or spin patterns. The officer also testified that while the patrol division did not have any handheld audio recorders, some officers had their own, but he did not. The officer testified that he did not keep field notes and that he generated a one-page report regarding this case.

The jury was instructed on three theories upon which they could convict Gordon: (1) being under the influence of intoxicating liquor, which rendered him incapable of safely driving; (2) having a blood alcohol concentration of 0.10 or more; and/or (3) having a blood alcohol concentration of 0.10 or more by measurement within two hours of driving. The jury could also return a general guilty verdict without specifying a particular theory, if they unanimously found beyond a reasonable doubt that at least one of the three theories was proven beyond a reasonable doubt. In finding Gordon guilty, the jury did not specify a particular theory but

---

[1] At trial, Gordon stipulated to the elements of substantial bodily harm.

chose this last option. The district court denied Gordon's motion for a new trial or acquittal and entered a judgment of conviction. Gordon now appeals.

## DISCUSSION

### Validity of the jury's verdict

Gordon argues that the jury's guilty verdict was not supported by substantial evidence. Two of the three theories of guilt were premised upon finding a BAC of 0.10. However, factoring in variance or margin of error could lower Gordon's 0.10 BAC reading to 0.099. As a result, Gordon argues that there was insufficient evidence to support these two theories of guilt. Because the jury returned a general guilty verdict, Gordon contends that this allows for the possibility that the jury found Gordon guilty on one of the theories not supported by sufficient evidence. On this basis, Gordon concludes that the entire verdict is tainted and should be reversed.

The United States Supreme Court has observed:

> We have never suggested that in returning general verdicts . . . the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."[2]

We have relied on United States Supreme Court decisions in concluding that "a jury may return a general guilty verdict on an indictment charging several acts in the alternative even if one of the possible bases of conviction is unsupported by sufficient evidence."[3] "[A]s long as [the] theories are legally sufficient, the verdict will stand even if one theory is ultimately found to be factually unsupported by the evidence."[4] Although the United States Supreme Court has noted that it would be preferable for a court to

[2]*Schad v. Arizona,* 501 U.S. 624, 631 (1991) (plurality opinion) (quoting *McKoy v. North Carolina,* 494 U.S. 433, 449 (1990) (Blackmun, J., concurring) (footnotes omitted)), *cited with approval in Tabish v. State,* 119 Nev. 293, 313, 72 P.3d 584, 597 (2003).

[3]*Rhyne v. State,* 118 Nev. 1, 10, 38 P.3d 163, 169 (2002) (citing *Griffin v. United States,* 502 U.S. 46, 56-57 (1991)).

[4]*Id.; see also Turner v. United States,* 396 U.S. 398, 420 (1970) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").

remove a theory that is not supported by sufficient evidence from the jury's consideration, the refusal to do so does not provide an independent basis for reversing an otherwise valid conviction.[5]

> The standard of review for sufficiency of the evidence in a criminal case is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after viewing the evidence in the light most favorable to the prosecution. A reviewing court will not disturb a verdict on appeal if it is supported by substantial evidence.[6]

The content of the jury verdict form was based on NRS 484.3795 (2002) (amended 2003),[7] which reads in pertinent part:

> 1.   A person who:
> (a)   Is under the influence of intoxicating liquor;
> (b)   Has a concentration of alcohol of 0.10 or more in his blood or breath;
> (c)   Is found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have a concentration of alcohol of 0.10 or more in his blood or breath;
>
> . . .
>
> and does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle on or off the highways of this state, if the act or neglect of duty proximately causes . . . substantial bodily harm to, a person other than himself, is guilty of a category B felony . . . .

Here, Gordon challenges the evidentiary sufficiency of the two theories of guilt premised upon a BAC result of 0.10 or more, but he does not challenge the remaining theory of guilt premised on being under the influence of intoxicating liquor. Importantly, Gordon also does not challenge the legal sufficiency of any of these three theories. Because Gordon only challenges the evidentiary support for the BAC theories and not their legal sufficiency, the jury's general guilty verdict may stand if there is sufficient evidence to support the theory that Gordon was driving under the influence of intoxicating liquor under NRS 484.3795(1)(a).

Gordon testified that, prior to the accident, he had consumed 6½ beers. The investigating deputies testified that Gordon exhibited signs of intoxication. Gordon also failed the horizontal gaze

---

[5]*Griffin,* 502 U.S. at 60.

[6]*Domingues v. State,* 112 Nev. 683, 693, 917 P.2d 1364, 1371 (1996) (citation omitted).

[7]In 2003, this section was amended by substituting "0.08" for "0.10." *See* 2003 Nev. Stat., ch. 421, § 7, at 2560. This change became effective on September 23, 2003. *See id.* § 15, at 2566.

nystagmus field test. A blood test yielded a BAC result of 0.10. After viewing all of this evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found beyond a reasonable doubt that Gordon was driving under the influence of intoxicating liquor in violation of NRS 484.3795(1)(a) when he hit the motorcyclist. Because the evidence supports a violation under NRS 484.3795(1)(a) we do not reach the issue of the sufficiency of the evidence under the theories enumerated in NRS 484.3795(1)(b) or (c). Therefore, we conclude that Gordon's conviction was valid.[8]

## The State's investigation

Gordon argues that the State's investigation was so lacking and inept that it denied him due process because it hampered his defense. In support of this argument, Gordon cites *Crockett v. State*,[9] but he notes that he is not accusing the State of deliberately destroying, concealing, or withholding evidence. Gordon contends that he was prejudiced to the extent that the crime scene was not accurately preserved because inaccurate measurements were taken during the accident scene investigation and critical objects were omitted in the accident reconstruction diagram. Gordon also contends that he was prejudiced because only a single blood draw was obtained when a series of blood draws is usually ordered.

While *Crockett* addresses evidence destruction and loss, *Daniels v. State*[10] and *Randolph v. State*[11] are more on point in addressing allegations that the State's failure to gather evidence was prejudicial.

"In a criminal investigation, police officers generally have no duty to collect all potential evidence."[12] However, " 'this rule is not absolute.' "[13] This court has adopted a two-part test to determine when dismissal of charges is warranted due to the State's failure to gather evidence.[14]

The defense must first show that the evidence was material, *i.e.,* that there is a reasonable probability that the result of the

---

[8]We also conclude that the district court properly rejected appellant's motion for a new trial or judgment of acquittal.

[9]95 Nev. 859, 603 P.2d 1078 (1979).

[10]114 Nev. 261, 956 P.2d 111 (1998).

[11]117 Nev. 970, 36 P.3d 424 (2001).

[12]*Id.* at 987, 36 P.3d at 435 (citing *Daniels,* 114 Nev. at 268, 956 P.2d at 115).

[13]*Daniels,* 114 Nev. at 268, 956 P.2d at 115 (quoting *State v. Ware,* 881 P.2d 679, 684 (N.M. 1994)).

[14]*Id.* at 267-68, 956 P.2d at 115.

proceedings would have been different if the evidence had been available. Second, if the evidence was material, the court must determine whether the failure to gather it resulted from negligence, gross negligence, or bad faith. In the case of mere negligence, no sanctions are imposed, but the defendant can examine the State's witnesses about the investigative deficiencies; in the case of gross negligence, the defense is entitled to a presumption that the evidence would have been unfavorable to the State; and in the case of bad faith, depending on the case as a whole, dismissal of the charges may be warranted.[15]

Here, the inaccurate lane measurements and missing objects in the accident reconstruction diagram are irrelevant to the issue of whether Gordon was driving under the influence. Further, the missing objects were depicted in admitted pictures and Gordon's counsel used them to cross-examine the investigating officers. While Gordon points out that no video of the scene was taken nor were the officer's conversations with Gordon recorded, the investigating officer testified that the department did not have such equipment at its disposal. Thus, it is difficult to see how the officer's investigation should have included these recordings. Gordon also notes that the investigating officer did not keep field notes, but Gordon fails to show how this would have supplied any additional relevant information. The other deficiencies Gordon cites, *i.e.*, failure to incorporate point-of-impact debris, the motorcycle's skid pattern and how far the truck had entered the travel lane, probably should have been noted. However, even had they been, they would have been tangential to the issue of Gordon's state of intoxication while driving. Therefore, we conclude that the missing evidence is not material and there was not a reasonable probability that the result of the proceedings would have been different if they had been available to Gordon.

As for the blood evidence, while a series of blood draws might have shown an increasing BAC, which in turn would have allowed the defense to argue that Gordon's BAC at the time of the accident was lower than 0.10, this would not have made a difference in this case because of the evidence supporting Gordon's violation of NRS 484.3795(1)(a).

Even if the evidence were material, Gordon admitted that he is not claiming that the State deliberately destroyed, concealed or withheld evidence. Neither does he allege that the State failed to

---

[15]*Randolph,* 117 Nev. at 987, 36 P.3d at 435 (citing *Daniels,* 114 Nev. at 267, 956 P.2d at 115).

gather evidence in bad faith. Lack of bad faith precludes dismissing the charges against Gordon. Further, Gordon has not shown that the failure to gather the missing evidence rose to the level of gross negligence. In light of the investigating officers' trainee status, their failure to gather evidence was mere negligence at most. In the case of negligence, no sanctions are appropriate, but the defendant may examine the State's witnesses regarding the investigative deficiencies. Gordon was allowed to do this at trial. As a result, Gordon has already had an opportunity to point out the State's investigative deficiencies to the jury. Thus, we conclude that Gordon failed to demonstrate prejudice.

## CONCLUSION

Because there was substantial evidence to sustain any one of the three legally sufficient theories of DUI upon which the jury's general guilty verdict rested, we conclude that Gordon's conviction may stand. We also conclude that the State did not fail to properly investigate, gather, or preserve evidence. Even if it did, it was mere negligence and Gordon was afforded the appropriate remedy at trial. Accordingly, we affirm the judgment of conviction.

MAUPIN and PARRAGUIRRE, JJ., concur.