ARNOLD DEAN ANDERSON, AKA DEAN ARNOLD ANDERSON, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 42289

August 25, 2005                                          118 P.3d 184

*Steven G. McGuire,* State Public Defender, and *Harriet E. Cummings,* Deputy Public Defender, Carson City, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard W. Sears,* District Attorney, and *Kevin R. Briggs,* Deputy District Attorney, White Pine County, for Respondent.

[redacted]

Before MAUPIN, DOUGLAS and PARRAGUIRRE, JJ.

## OPINION

By the Court, MAUPIN, J.:

In this case we consider whether a trial jury may properly convict a defendant charged with driving under the influence of intoxicants based upon alternate theories of criminality. We also consider whether prosecutorial misconduct requires reversal of a conviction based upon conflicting evidence.

### *FACTS AND PROCEDURAL HISTORY*

On May 12, 2001, at approximately 4:30 in the afternoon, Nevada Highway Patrol Troopers Scott Simon and David Stauffacher observed a blue and white pickup traveling in the opposite direction on U.S. 93 in White Pine County, Nevada. Both troopers noticed that the driver of the pickup was bearded and wore no shirt, and that a young man with a maroon shirt occupied the pas-

senger seat. On-board radar indicated that the pickup was traveling at 89 miles per hour in a 70-mile-per-hour zone. Just before Trooper Simon executed a U-turn to initiate pursuit, Trooper Stauffacher turned and noticed one of the pickup's wheels touch the shoulder. They were eventually able to effect a traffic stop, after which Trooper Simon approached the vehicle with Trooper Stauffacher acting as "cover." At that point, although the officers did not observe the occupants switch seats, a shirtless Anderson emerged from the passenger-side door. Anderson's 14-year-old son, Jacob, remained in the driver's seat. When Simon asked Anderson why he switched places with his son, Anderson first denied doing so and then said he was just being a "stupid sh—." Smelling alcohol on Anderson's person, Simon conducted field sobriety tests and a preliminary breath test, all of which Anderson failed. The troopers arrested Anderson and left Jacob and the truck with family friends nearby. Subsequent breath testing confirmed blood-alcohol levels in excess of the statutory minimums.

The prosecution ultimately charged Anderson with felony driving under the influence (DUI), third offense. At trial, the jury found Anderson guilty. The district court enhanced the charge to felony status based upon Anderson's prior DUI convictions and ultimately sentenced Anderson to the maximum penalty allowed—28 to 72 months imprisonment. The court also imposed a fine of $2,000, a $25 administrative assessment, and separate assessments for genetic marker testing and forensic fees. Anderson appeals.

## DISCUSSION

### Reliability of jury verdict

The State prosecuted Anderson in the alternative on all three statutory theories for DUI criminal liability: (1) operating a motor vehicle while under the influence of intoxicating liquor, and/or (2) operating a motor vehicle while having 0.10 percent or more by weight of alcohol in the blood, and/or (3) being found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have 0.10 percent or more by weight of alcohol in his blood.[1] A special verdict form contained spaces for the jury to separately determine guilt under any of the three theories. During closing argument, the State told jurors that it presented no evidence in support of the second alternative and that they could not base a guilty verdict upon that theory. Despite this admonition, the jury unanimously found Anderson guilty of all three theories on the special verdict form.

Anderson argues that the special findings are all unreliable because the State presented no evidence in support of the second the-

---

[1]See NRS 484.379.

ory. In this, he also argues that there is no way of knowing whether the jury was unanimous as to any one theory. We disagree.

NRS 175.481 requires that a verdict be unanimous. In the context of alternative theories of murder, we held in *Evans v. State* that "the Constitution does not require separate instructions or jury unanimity on the alternative theories of premeditated and felony murder . . . because actual intent to kill during the commission of a kidnapping can reasonably be considered the 'moral equivalent of premeditation.'"[2] Thus, under *Evans* and *Schad v. Arizona,*[3] a jury need not be unanimous as to a particular theory of culpability for a single offense to sustain a conviction. A unanimous general verdict of guilt will support a conviction so long as there is substantial evidence in support of one of the alternate theories of culpability.[4]

Here, however, the adjudication of guilt was not dependent upon a general verdict based upon alternate theories of culpability. Rather, the jury was given the task of separately determining each of the statutory theories of criminality. Thus, to result in a valid conviction, it was necessary for the jury to issue a unanimous verdict as to one of the three theories. Although the jury clearly erred in finding Anderson guilty under the second theory, it still issued a unanimous verdict as to the other two. The record reflects substantial evidence supports the jury's findings on the remaining theories and appellant has not demonstrated how the erroneous finding on one theory renders the unanimous findings on the other theories unreliable. Accordingly, this error is harmless.[5]

In light of the above, we reject the appellant's argument that jurors failed to achieve unanimity and that all of the verdicts are defective under *Evans*.

*Prosecutorial misconduct*[6]

Anderson argues that the prosecution rendered his trial fundamentally unfair by appealing to the jurors' civic duty while prey-

---

[2]*Evans v. State,* 113 Nev. 885, 895-96, 944 P.2d 253, 260 (1997) (quoting *Schad v. Arizona,* 501 U.S. 624, 644 (1991) (plurality opinion)).

[3]501 U.S. 624.

[4]*See Gordon v. State,* 121 Nev. 504, 117 P.3d 214 (2005).

[5]*See* NRS 178.598 ("[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded").

[6]The State argues that Anderson failed to preserve this issue for appeal for failure to object at trial. While true, this court may consider the issue *sua sponte. See Coleman v. State,* 111 Nev. 657, 662, 895 P.2d 653, 656 (1995).

ing on their fears, vouching for the veracity of State witnesses, personally voicing opinions concerning the credibility of defense witnesses, attempting to shift the burden of proof, and impliedly referring to Anderson's exercise of his right to remain silent.

To determine if prejudicial prosecutorial misconduct occurred, the relevant inquiry is whether a prosecutor's statements so infected the proceedings with unfairness as to result in a denial of due process.[7] This court must consider the context of such statements, and " 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.' "[8]

A prosecutor may not vouch for the credibility of a witness or accuse a witness of lying.[9] A prosecutor may also not use a defendant's post-arrest silence for impeachment purposes, regardless of whether the defendant received *Miranda* warnings.[10] Further, the prosecution may not refer to a defendant's post-arrest silence in its case-in-chief.[11] Reversal, however, is unnecessary if the prosecutor's references to the defendant's post-arrest silence are harmless beyond a reasonable doubt.[12] Such comments are harmless beyond a reasonable doubt if (1) the comments were merely passing in nature, or (2) there is overwhelming evidence of guilt.[13] Also, failure to object precludes appellate review of the matter unless it rises to the level of plain error.[14] "In conducting plain error review, we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights."[15] Thus, "the burden is on the defendant to show actual prejudice or a miscarriage of justice."[16] As noted in the margin above, Anderson failed to object to the alleged misconduct he now claims mandates reversal.

---

[7]*Thomas v. State,* 120 Nev. 37, 47, 83 P.3d 818, 825 (2004).

[8]*Id.* (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)).

[9]*Lisle v. State,* 113 Nev. 540, 553, 937 P.2d 473, 481 (1997) (stating that it is improper to vouch for the credibility of a government witness); *Ross v. State,* 106 Nev. 924, 927, 803 P.2d 1104, 1105 (1990) (stating that it is improper argument to characterize a witness as a liar).

[10]*Coleman,* 111 Nev. at 664, 895 P.2d at 657.

[11]*Morris v. State,* 112 Nev. 260, 264, 913 P.2d 1264, 1267 (1996).

[12]*Id.*

[13]*Id.* at 264, 913 P.2d at 1267-68.

[14]*Green v. State,* 119 Nev. 542, 545, 80 P.3d 93, 95 (2003); *see also* NRS 178.602.

[15]*Green,* 119 Nev. at 545, 80 P.3d at 95.

[16]*Id.*

We conclude that the prosecutor's misconduct raises the specter of plain error in several respects. First, by stating that Jacob "couldn't not look at [him] and lie to [him]," and that Anderson and his son had years to "cook up a story and they did." Second, by improperly referring to Anderson's post-arrest silence in stating, for example, "if [Anderson] knows he's been wronged this entire time by these two cops, how come it never came out once? You know why, because he wasn't being wronged—he was guilty and he knew it." Third, by stating that "[Anderson is] a drunk driver—he needs to be convicted—he's endangering people—he's certainly endangering his child—do his child and all of us a favor—do your duty in this case—find that he's guilty." Fourth, by offering personal opinions as to the verity of its own witnesses.

Having determined that the error is plain, we also conclude that the error affects Anderson's substantial rights, thus compelling reversal. First, none of the arguments described above were "passing" in nature. Rather, they composed the heart of the State's views of the case and the defendant. Second, while the evidence was otherwise sufficient to sustain a conviction,[17] that evidence was not overwhelming. To explain, the conviction turned on the credibility of conflicting testimony concerning whether Anderson, although clearly under the influence, was the driver of the vehicle pulled over by Troopers Simon and Stauffacher. And, more particularly, Anderson's argument that it was virtually impossible to make a change of drivers at high speed, especially when the driver is highly intoxicated and the passenger underaged and inexperienced, raises arguable reasonable doubt. Finally, the polemics of the prosecutor clearly changed the focus of the case to his personal views, not the evidence. Thus, under *Green,* we conclude that Anderson has satisfied the final leg of a plain error analysis, actual prejudice. Accordingly, the judgment below is reversed and the matter is remanded for a new trial. In this, we admonish the prosecution for such misconduct. Accordingly, if this prosecutor continues to repeat this type of adversarial rhetoric, this court will not hesitate to refer him to the state bar for discipline. A prosecutor's duty is to fairly present cases, not just to obtain convictions. To advise a jury that it has a duty to convict is to distort the entire criminal justice process.

With regard to Anderson's other assertions of prosecutorial misconduct, we conclude that they are without merit.

---

[17]*See Braunstein v. State,* 118 Nev. 68, 79, 40 P.3d 413, 421 (2002).

## CONCLUSION

We conclude that the jury verdict is valid because the jury was unanimous as to two theories of culpability that are supported by substantial evidence. However, the prosecutorial misconduct committed in this case warrants plain error review because it affected Anderson's substantial rights. Accordingly, we reverse the judgment of conviction and remand this matter to the district court for a new trial.[18]

DOUGLAS and PARRAGUIRRE, JJ., concur.

---

[18]We have considered Anderson's other assignments of error and conclude that they are without merit.