# IN THE SUPREME COURT OF THE STATE OF NEVADA

AMY DENISE BESSEY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65431

FILED

JAN 25 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit murder, attempted murder with the use of a deadly weapon, battery with the use of a deadly weapon resulting in substantial bodily harm, discharging a firearm out of a vehicle, discharging a firearm at or into a vehicle, and two counts of solicitation to commit murder. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

### FACTS AND PROCEDURAL HISTORY

Robert Bessey was in the middle of divorce proceedings with his wife, Amy, and had recently left the family home in the Las Vegas area to live in Logandale. Robert was driving to work early one morning when he was shot in the back of the head by an occupant of another vehicle on the I-15 freeway. Robert survived the shooting. The occupants of the other vehicle were Amy's brother, Rick, and her son, Michael.

Prior to the shooting, Amy spoke with Courtney Smith, who was dating Michael, and indicated that she believed Robert to be worth more dead than alive due to his life insurance policy. Amy asked Courtney if her father would kill Robert but Courtney refused to ask her father. Amy later asked Courtney if she would kill Robert but, again,

Courtney refused. Finally, Amy asked Courtney to invite Robert back to the home so that Amy could kill him herself. This time, Courtney agreed, but Robert did not accept the invitation.

After the freeway shooting, Robert spoke with detectives and told them about his divorce and that the shots came from a gold-colored SUV. Detectives later showed Robert surveillance footage of two men at a gas station who were driving a gold-colored SUV on the day of the shooting. Robert identified the two men as Michael and Rick.

The detectives interviewed Amy and Michael and placed Michael under arrest. They did not immediately arrest Amy but instead obtained and executed a search warrant at Amy's home. While detectives executed the warrant, Amy told her niece that they were all in trouble. Amy later turned herself in.

The State filed an information, charging Amy with conspiracy to commit murder, attempt murder with use of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm, discharging a firearm out of motor vehicle, discharging firearm at or into motor vehicle, and two counts of solicitation to commit murder. The jury ultimately found Amy guilty of all charges.

## DISCUSSION

On appeal, Amy raises many issues. We have considered each issue and affirm the judgment of conviction for the reasons discussed below.

*The district court did not abuse its discretion when it prevented testimony regarding the possible drugs in Robert's system or testimony regarding Robert's propensity to brandish firearms*

Amy argues that the district court abused its discretion when it prevented her from inquiring about the drugs in Robert's system and from inquiring about Robert's propensity to brandish firearms. We disagree on both claims.

We generally review a district court's decision to admit or exclude evidence for an abuse of discretion. *Petty v. State*, 116 Nev. 321, 325, 997 P.2d 800, 802 (2000). Evidence must be relevant to be admissible. NRS 48.025. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. A trial court must determine whether the probative value of otherwise relevant evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or the potential to mislead the jury. NRS 48.035(1).

*Prescription drug testimony*

A trial court will generally preclude "impeachment with extrinsic evidence on a collateral matter." *See, e.g., Brant v. State*, 130 Nev., Adv. Op. 97, 340 P.3d 576, 582 (2014) (finding certain violent acts by the victim against an unrelated party collateral).

At trial, Amy inquired as to which drugs Robert may have been taking at the time of the shooting and while making his statement to the detectives in the hospital. The only possible relevance is whether Robert's perceptions were accurate. The primary information that he gave the detectives was that the shots came from a gold-colored SUV. That information turned out to be accurate as it was corroborated by other

evidence at trial. Because the evidence of the gold SUV was corroborated, evidence of Robert's prescription drug use was no longer relevant. Accordingly, we conclude that the district court did not abuse its discretion in excluding the drug-related testimony.

*Propensity to brandish firearms*

Character evidence can be offered by the accused against a victim showing the victim is violent and to show that the victim was the aggressor. *Petty,* 116 Nev. at 325-26, 997 P.2d at 802-03.

The incident in question occurred early in the morning on a freeway while Robert drove to work. Regardless of any past transgressions, Robert did not instigate any violence on the morning of the shooting. Moreover, Amy did not argue that Robert was the primary aggressor. In fact, Amy's defense was that she was unaware of any plan to harm Robert and that she had numerous opportunities to act in self-defense and chose not to do so to support her theory that she had nothing to do with the shooting. Because self-defense was not an issue, Robert's character was not an issue and his allegedly violent nature was irrelevant. Accordingly, we conclude the district court did not abuse its discretion when it precluded Amy from inquiring into Robert's propensity to brandish firearms.

*The district court's decision to preclude Michael's boss from relaying hearsay statements was not plain error and preventing his boss from giving lay opinion testimony was harmless error*

Amy argues that the district court erred in preventing Michael's boss from giving his opinion regarding Michael and Robert's relationship. She also argues that the district court erroneously prevented the boss from relaying Michael's hearsay statements under the state of

mind exception to the hearsay rule. We conclude that neither claim warrants reversal.

We will generally "overturn a district court's decision to admit or exclude evidence only when there has been an abuse of discretion." *Petty*, 116 Nev. at 325, 997 P.2d at 802. Where a party fails to preserve an issue, however, this court will review that issue only if it is patently prejudicial or constitutes plain error. *Saletta v. State*, 127 Nev. 416, 421, 254 P.3d 111, 114 (2011).

> In conducting plain error review, we must examine whether there was error, whether the error was plain or clear, and whether the error affected the defendant's substantial rights. An error is plain if the error is so unmistakable that it reveals itself by a casual inspection of the record. . . . [A]nd, normally, the defendant must show that an error was prejudicial in order to establish that it affected substantial rights.

*Id.* (citation and internal quotations omitted).

*Michael's hearsay statements*

An out-of-court statement generally cannot be admitted for the truth of the matter asserted. *See* NRS 51.065; *see also* NRS 51.035 (defining "hearsay"). When a statement is not offered for its truth, however, it is by definition, not hearsay. *See Cunningham v. State*, 113 Nev. 897, 904-05, 944 P.2d 261, 265-66 (1997) (holding that a statement offered to show the declarant's state of mind while making the statement is not offered for its truth, and is thus not hearsay).

The district court prevented Michael's boss from testifying about statements Michael made regarding Robert on other grounds. Amy claims, for the first time on appeal, that the statements were not offered

for their truth but to show Michael's state of mind.[1] Therefore, the issue is not preserved and we may review only for plain error.

The record does not make it clear that Amy wanted the statements to show Michael's state of mind. Furthermore, Amy cannot show that the district court's decision to exclude the statements affected her substantial rights because there was no real prejudice. The jury heard from Robert directly that he and Michael did not get along. The jury also heard similar evidence from Amy and from Courtney Smith. Because Amy was not prejudiced, the district court's decision cannot be considered plain error.

### Michael's boss's opinion

A lay witness can express an opinion if it is "[r]ationally based on the perception of the witness; and . . . [h]elpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." NRS 50.265. We have held such opinion testimony does not violate the hearsay rule and is admissible even when it was based upon out-of-court statements "so long as the substance of those statements is not revealed to the jury" and the witness is "subject to cross-examination as to the existence of the statements." *Browne v. State*, 113 Nev. 305, 312, 933 P.2d 187, 191 (1997) (citing *Shults v. State*, 96 Nev. 742, 747-48, 616 P.2d 388, 392 (1980)).

---

[1]At trial, Amy claimed the statements were admissible as present sense impressions and as statements by a charged coconspirator.

The district court prevented Michael's boss from giving his opinion based on Michael's statements. At trial, Amy properly objected on this ground. Therefore, we may review this issue under the abuse of discretion standard.

Although the district court was correct to prevent the boss from relaying what Michael had said, the boss should have been allowed to give his opinion as to Michael and Robert's relationship, so long as he did not introduce the actual statements and remained available for examination by the State. *See id.* However, this error was harmless because many other witnesses were able to testify to the strained relationship between Michael and Robert. Accordingly, we conclude that the district court's erroneous decision on this issue does not warrant reversal.

*The State used Rick's text message in its opening statement in good faith and its use did not constitute reversible error*

Amy argues that the district court erred by overruling her objection and allowing the State to use Rick's text message in its opening statement because the State could not prove that it had disclosed the message in a workable format before trial.[2] Amy also argues that the text message violated her right to the presumption of innocence at trial, citing to *Watters v. State*, 129 Nev., Adv. Op. 94, 313 P.3d 243, 249 (2013), to

---

[2]The record indicates that the State provided an HTML file of Amy's phone examination rather than a PDF file of the text messages with bates-stamp numbering because the file was too large to convert to PDF. The district court did not find that the State failed to disclose the message, but that it failed to meet its burden to demonstrate that it had disclosed the message. Accordingly, the district court, on the seventh day of trial, found the text message to be inadmissible.

compare graphically marking a defendant's face as guilty in an opening statement to the instant case. The State argues that it used the text message in its opening statement based upon a good-faith belief that it was admissible. We agree with the State.

Generally, the State may not refer to evidence in its opening statement that will not be admissible at trial. *Johnson v. State*, 122 Nev. 1344, 1357-58, 148 P.3d 767, 776 (2006). The State should only use evidence it "'intends to offer'" and which it "'believes in good faith will be available and admissible.'" *Watters*, 129 Nev., Adv. Op. 94, 313 P.3d at 247 (quoting ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 3–5.5 (3d ed.1993)).

At trial, Amy objected to the State's use of the message in its opening statement on the grounds that there was no foundation that the statement came from Rick. The district court overruled the objection and allowed the State to use the text message. Thus, the State had a good-faith belief that the statement would be admissible.

During opening statements, Amy failed to allege that she had not received the text message in discovery. The State had no reason to believe that the message would later be deemed inadmissible on discovery grounds.

Amy's *Watters* comparison is without merit. *Watters* dealt with the prosecutors creating a highly prejudicial piece of demonstrative evidence. The State, in this case, used a piece of evidence, believing in

good faith that it would be admissible during the presentation of evidence.[3]

Because the State believed in good faith that the message would be admissible, the State's use of the text message, despite the district court's later finding of inadmissibility on discovery grounds, was not reversible error. Accordingly we do not reverse the conviction on this ground.

*The district court properly allowed Amy's niece to testify*

Amy argues that in allowing her niece to testify, the district court (1) violated her rights under *Brady v. Maryland*, 373 U.S. 83 (1963); (2) violated her statutory rights to receive a written statement; and (3) erred because the State did not provide a last-known address. We disagree on all three claims.

*There was no Brady violation*

The State violates a defendant's due process rights if it withholds any potentially exculpatory evidence that is material to guilt or punishment. *Rippo v. State*, 132 Nev., Adv. Op. 11, 368 P.3d 729, 746 (2016), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Oct. 3, 2016) (No. 16-6316).

> To establish a *Brady* violation, the defendant must show (1) that the State withheld evidence, (2) which is favorable to the accused because it is exculpatory or impeaching, and (3) that prejudice resulted because the evidence was material, i.e.,

---

[3]Amy also argues that *Watters* entitled her to a curative instruction. However, because there was no reversible error, and because the jury was instructed that nothing presented during opening statements constitutes evidence, a specific curative instruction was not necessary.

> that there is a reasonable possibility of a different
> result had there been disclosure.

*Id.*

The contents of the niece's testimony were not at all exculpatory because none of her testimony could have helped Amy's defense. The niece testified that Amy panicked and made expletive-laden statements after the detectives executed the search warrant at her home and took firearms, computers, and phones. Although Amy argued at trial that there was an alternative context to her statements, i.e., that she had lost data and photos from her computer, that would at most make the niece's testimony neutral. Accordingly, Amy does not satisfy the requirements to show a *Brady* violation.

### *There was no written document to produce pursuant to NRS 174.235*

NRS 174.235(1)(a) entitles the defendant to copies of written or recorded statements made by the defendant or by a witness the State intends to call at trial. The defendant is not, however, entitled to privileged information or work product prepared by, or on behalf of, the district attorney. NRS 174.235(2)(a).

Amy's claim that the State violated NRS 174.235(1)(a) because it did not produce the niece's pretrial statement or its investigator's notes fails based on a plain reading of the statute. First, because the niece's interview was neither written nor recorded, the State had no obligation to disclose what she said. Second, Amy is not entitled to the investigator's notes because she is not entitled to discovery of internal reports or documents prepared either by the prosecuting attorney or on the prosecuting attorney's behalf. The investigator's notes are work product and are thus non-discoverable. Accordingly, Amy was neither entitled to a written statement that did not exist nor the investigator's work product.

*The court prevented any prejudice from non-disclosure of the niece's address by holding a hearing outside the presence of the jury*

NRS 174.234(1)(a)(2) requires notice within five judicial days before the start of trial of all witnesses the State intends on calling and their last known address. NRS 174.295(2) gives the trial court discretion to impose remedies as it sees fit for a NRS 174.234 violation. The district court has a range of remedies available for any such violation of NRS 174.234. *Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1259-60 (2005). "[W]here the State's non-compliance with a discovery order is inadvertent and the court takes appropriate action to protect the defendant against prejudice, there is no error justifying dismissal of the case." *State v. Tapia*, 108 Nev. 494, 497, 835 P.2d 22, 24 (1992).

The State failed to list the niece's address on any of its pretrial witness lists. Although the district court would have been within its discretion to strike the witness, it was also within its discretion to allow her to testify. Amy was the witness's aunt. The most basic level of diligence on Amy's part should have uncovered her own niece's last known address in this case. Furthermore, the district court required the niece to testify outside the presence of the jury before it brought the jury back in to hear the niece's testimony. The testimony was exclusively related to the conversation that she had with Amy after the detectives executed the search warrant at Amy's home. Thus, there was no part of her testimony that Amy should have been unprepared for.

Because the district court has discretion in remedying the failure to disclose the witness's last known address, and it used its discretion to ensure there was no prejudice from the lack of disclosure, the district court did not err when it allowed the niece to testify.

*Allowing Courtney Smith to testify was not plain error*

Amy contends that Courtney Smith was an accomplice to her charged crimes, therefore, the district court erred by allowing Smith to testify because Smith's testimony was uncorroborated. The State argues that Smith was not an accomplice because Smith was charged for her role in a crime that Amy was not facing charges for. The State also notes that Amy did not make this argument in the district court. We agree with the State.

"An accomplice is . . . one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." NRS 175.291(2). We have also held that in addition to NRS 175.291(2)'s plain language definition, "an accomplice is 'one . . . who is culpably implicated in, or unlawfully cooperates, aids or abets in the commission of the crime charged.'" *Ramirez-Garza v. State*, 108 Nev. 376, 378, 832 P.2d 392, 393 (1992) (quoting *Orfield v. State*, 105 Nev. 107, 109, 771 P.2d 148, 149 (1989)).

Here, Courtney was not charged with any crime arising out of the freeway shooting; thus, Courtney is not liable for any of the charges that Amy faced in this trial. Furthermore, the evidence did not show that Courtney aided, abetted, or cooperated with Amy in the commission of any of the crimes for which Amy was charged. Because Courtney was not an accomplice, the decision to allow her to testify without requiring corroborating evidence was not error, let alone plain error.[4]

---

[4]Amy also argues that the district court erred by failing to instruct the jury regarding accomplice testimony. Because Courtney was not an accomplice, we conclude that Amy was not entitled to such an instruction.

*The district court's failure to hold a Petrocelli hearing before allowing Courtney Smith to testify was not plain error*

Amy argues that the district court should have held a pretrial *Petrocelli* hearing before allowing Smith to testify because Smith testified to bad acts not charged in this case. *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985). Amy did not object to the admission of the evidence in the district court. Although we agree that a pretrial hearing would have been proper, the testimony would have nonetheless been admissible and Amy cannot demonstrate that her substantial rights have been prejudiced.

The State may not offer evidence of other bad acts to prove the defendant's guilt on the charged crimes. NRS 48.045(2). Evidence of other bad acts is admissible, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

"A trial court deciding whether to admit such acts must conduct a hearing on the matter outside the presence of the jury and on the record." *Walker v. State*, 116 Nev. 442, 446, 997 P.2d 803, 806 (2000). "At the hearing, the court must determine whether (1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Id.* (internal quotations omitted). "Failure to conduct a *Petrocelli* hearing on the record is grounds for reversal on appeal *unless . . . the record is sufficient for this court to determine that the evidence is admissible under the test for admissibility of bad act evidence . . . .*" *King v. State*, 116 Nev. 349, 354, 998 P.2d 1172, 1175 (2000) (emphasis added).

The district court allowed Courtney to testify to an incident where Amy asked Courtney to deliver a Red Bull to Robert to entice him to come to Amy's home where Amy would either poison Robert or shoot him and claim self-defense. As the State correctly pointed out earlier, Amy was not charged with any crime arising out of the Red Bull incident. Therefore, this sequence of events is precisely the type of evidence that NRS 48.045(2) prohibits to demonstrate that the defendant acted in conformity with one bad act to sustain a finding of guilt on the crimes for which she has been charged. Thus, the district court should have held a *Petrocelli* hearing to determine whether this evidence could be offered for a permitted reason, such as proof of motive, intent, or absence of mistake, without such probative value being substantially outweighed by prejudicial effect.

However, failure to hold a *Petrocelli* hearing does not, in and of itself, mean that we must overturn Amy's conviction. The record in this case illustrates that this evidence showed proof of Amy's motive, intent, and absence of mistake because the entire theory of the case is that Amy wanted Robert dead and took steps to achieve her goal. Because the testimony showed Amy's intent to kill Robert, it is likely that the district court would have allowed this evidence to reach the jury following a *Petrocelli* hearing. Therefore, the failure to hold a *Petrocelli* hearing is not reversible plain error as it did not prejudice Amy's substantial rights.

*Allowing the custodian of records to testify as to Robert's life insurance policy was not plain error*

Amy argues that the district court erred when it allowed the custodian of records for Robert's life insurance policy to testify as to the

effects of their divorce on Robert's policy without certifying the witness as an expert.[5] We disagree.

Amy did not object to the custodian testifying to the specifics regarding Robert's policy. Lay witnesses may testify as to their perceptions, even if those perceptions are enhanced by specific training, without first being certified as an expert. *Thompson v. State*, 125 Nev. 807, 815, 221 P.3d 708, 714 (2009). The custodian testified that Robert's life insurance policy did not change following his divorce. Although she was not an expert in family law or insurance law, the district court permitted her to testify specifically about Robert's policy.

The testimony did not require any specialized knowledge other than the ability to read the insurance policy documents; therefore, the district court's decision to allow the custodian to testify without certifying her as an expert was not plain error.

*The State did not commit prosecutorial misconduct during closing argument because the alleged infractions were not improper*

Amy alleges that the State committed numerous instances of prosecutorial misconduct during closing argument. We disagree.

Generally, the way we review prosecutorial misconduct depends upon whether the alleged misconduct is of a constitutional or non-constitutional dimension. *Valdez v. State*, 124 Nev. 1172, 1188-89, 196 P.3d 465, 476 (2008). However, Amy failed to object at trial, therefore, we

---

[5]Amy was successful in preventing the custodian of records from testifying in general as to divorce law and life insurance policies. The record indicates that Amy only objected to the custodian testifying as to generalities and that once the district court asked the State to focus specifically on Robert's policy, Amy's attorney responded by simply thanking the judge.

review for plain error. *Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005). In determining if the record supports allegations of prosecutorial misconduct, we first consider whether the prosecutor's conduct was improper and then determine whether any improper conduct warrants reversal. *Valdez*, 124 Nev. at 1188, 196 P.3d at 476.

A prosecutor is not permitted to place the prestige of the State behind its witnesses. *Evans v. State*, 117 Nev. 609, 630, 28 P.3d 498, 513 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 732 n.5 (2015), *cert. denied* ___ U.S. ___, 136 S. Ct. 2019 (2016). Nor may the State vouch for the credibility of its witnesses. *Anderson*, 121 Nev. at 516, 118 P.3d at 187. However, the State may comment on the credibility of witnesses based on the evidence presented. *Evans*, 117 Nev. at 630, 28 P.3d at 513.

Amy claims that the State vouched for its witnesses' credibility when the prosecutor claimed that the witnesses were unbiased and had no motive to lie. Such comments were not improper because the prosecutor did not put the prestige of the State behind the witnesses, but merely argued, based on the evidence presented, that the witnesses had nothing to gain by lying. Therefore, this argument was not improper.

Amy also claims that it was improper for the State to argue that Michael and Rick were guilty and would get what was coming to them, and mention that Rick had been released from prison. We disagree. The State's theory of the case was that Amy conspired with Michael and Rick to kill Robert and that Michael and Rick were the two in the gold-colored SUV that morning. Without Michael and Rick's actions, most of the charges against Amy would not be sustainable. Furthermore, at no point did the State claim that the other two had already been convicted.

The State merely argued that this jury did not need to worry about Michael and Rick's fate in determining Amy's guilt, which was a correct statement of the law. Moreover, the jury heard evidence that Rick was incarcerated, therefore, it was not misconduct to mention it during closing. Accordingly, these instances of alleged prosecutorial misconduct were not improper.

Finally, Amy argues that it was improper for the State to claim what Amy's mindset was. The State did not claim to know Amy's mindset. The State merely argued that if Amy's mindset regarding Robert's life insurance was that she had to act before Robert could change his policy, then it was no coincidence that Robert was shot the day before the next life insurance bill was due. Moreover, Amy presented no authority to support her assertion that such a claim during closing argument is improper. Therefore, this argument was not improper.

Because none of the alleged incidents constituted prosecutorial misconduct, we do not overturn Amy's conviction on this ground.

## CONCLUSION

After considering all of Amy's claims on appeal, we conclude that none of the claims warrant reversal. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

SUPREME COURT
OF
NEVADA

(O) 1947A

17

cc: Hon. David B. Barker, District Judge
Blaine D. Beckstead
Legal Resource Group
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A