138 Nev., Advance Opinion 25

IN THE SUPREME COURT OF THE STATE OF NEVADA

KEITH JUNIOR BARLOW,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77055

**FILED**

APR 14 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of home invasion while in possession of a firearm, burglary while in possession of a firearm, assault with the use of a deadly weapon, and two counts of first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

*Affirmed in part, reversed in part, and remanded.*

JoNell Thomas, Special Public Defender, Alzora B. Jackson and Monica R. Trujillo, Chief Deputy Special Public Defenders, Clark County, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Marc P. DiGiacomo, Chief Deputy District Attorney, and John Niman, Deputy District Attorney, Clark County, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.[1]

_____

[1]The Honorable Douglas W. Herndon, Justice, did not participate in the decision of this matter.

22-11773

*OPINION*

By the Court, SILVER, J.:

A jury found appellant Keith Barlow guilty of multiple charges and sentenced him to death for murdering two people. During the guilt phase of Barlow's trial, the State presented overwhelming evidence that he broke into the victims' apartment and shot each of them multiple times. Before penalty phase closing arguments, the district court prohibited Barlow from arguing that if a single juror determines that there are mitigating circumstances sufficient to outweigh the aggravating circumstances, the death penalty is no longer an option and the jury must then consider imposing a sentence other than death. The district court reasoned that if the jury cannot reach a unanimous decision as to the weighing of aggravating and mitigating circumstances, the result is a hung jury. We take this opportunity to clarify that when a jury cannot reach a unanimous decision as to the weighing of aggravating and mitigating circumstances, the jury cannot impose a death sentence but must consider the other sentences that may be imposed. The jury is hung in the penalty phase of a capital trial only when it cannot unanimously agree on the sentence to be imposed. Thus, we conclude that the district court abused its discretion by prohibiting Barlow's argument. This error, in conjunction with others that occurred in the penalty phase, worked cumulatively to deprive Barlow of a fair penalty hearing. But we conclude that no relief is warranted on Barlow's claims regarding the guilt phase. Accordingly, we affirm the judgment of conviction in part, reverse it in part, and remand for a new penalty hearing.

 

## FACTS AND PROCEDURAL HISTORY

Barlow and the female victim Danielle Woods maintained a tumultuous, off-and-on romantic relationship. Woods also had a romantic relationship with the male victim Donnie Cobb and lived in his apartment. On February 1, 2013, Woods' niece Tamara Herron encountered Barlow, who asked her about Woods' whereabouts. Herron testified that Barlow appeared angry and agitated and told her that he was tired of the "games" Woods was playing. When Herron told Barlow she did not know Woods' whereabouts, he stated that he knew Woods was with Cobb.

Two days later, in the early morning hours, Barlow accosted Woods outside of a convenience store near Cobb's apartment. Barlow screamed at Woods, threatened her with an electronic stun device, and attempted to force her into his vehicle. When Cobb intervened, Barlow drew a firearm and aimed it at Cobb. Barlow told Woods and Cobb that he would "be back" and then he left the scene. Law enforcement responded to the incident and attempted to contact Barlow but could not locate him. About two hours after the incident, Barlow went to Cobb's apartment, broke in the door, and shot Woods and Cobb to death.

Responding to a report of gunshots, police officers discovered the dead bodies of Woods and Cobb. Law enforcement recovered a total of eight spent bullet casings from Cobb's apartment, including casings found in Woods' hair and on her chest. The ammunition was branded as Blazer .40 caliber Smith & Wesson casings. A Ruger .40 caliber semiautomatic handgun was found in Barlow's vehicle. The gun's magazine contained Blazer .40 caliber Smith & Wesson ammunition. A forensic examiner identified Barlow's thumbprint on the magazine loaded in the firearm.

 

Additional testing also matched DNA found on the magazine to Barlow. A forensic examiner conducted a microscopic comparison of the casings found at the scene and the test-fired casings from the Ruger handgun. That analysis showed that the casings recovered from the scene were fired by the handgun found in Barlow's vehicle.

The State charged Barlow with home invasion while in possession of a firearm, burglary while in possession of a firearm, assault with the use of a deadly weapon, and two counts of first-degree murder with the use of a deadly weapon and filed a notice of intent to seek the death penalty for both murders.[2] The jury returned guilty verdicts on all counts. Following the penalty hearing, the jury sentenced Barlow to death for both murders. This appeal followed.

## DISCUSSION

### Penalty phase claims

Because the primary issues addressed in this opinion—the limitations placed on Barlow's penalty phase argument, prosecutorial misconduct, the great-risk-of-death aggravating circumstance, and cumulative error—concern the penalty phase of the trial, we focus on that phase of trial first. We then address the guilt-phase claims.

### Limitation of Barlow's penalty-phase argument

Barlow argues that the district court erred in prohibiting him from making an argument based on a portion of the capital instruction this

---

[2]The State also charged Barlow with possession of a firearm by a prohibited person and unlawful possession of an electronic stun device but later dismissed those charges.

court provided in *Evans v. State*, 117 Nev. 609, 28 P.3d 498 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev. 356, 366 n.5, 351 P.3d 725, 732 n.5 (2015). We review a district court's determination about "the latitude allowed counsel in closing argument for abuse of discretion." *Glover v. Eighth Judicial Dist. Court*, 125 Nev. 691, 704, 220 P.3d 684, 693 (2009) (internal citation omitted).

Barlow, relying upon *Evans*, argues that he should have been allowed to argue that if at least one juror decides that there are mitigating circumstances sufficient to outweigh the aggravating circumstances, he could not be sentenced to death and the jury must then consider imposing a punishment other than death. The State contends that despite the *Evans* instruction saying just that, the district court properly prohibited the argument because a disagreement as to the weighing of aggravating and mitigating circumstances results in a hung jury such that the jury could not consider any other punishment. We hold that if at least one juror finds there are mitigating circumstances sufficient to outweigh the aggravating circumstances, the jury cannot impose a death sentence but nonetheless must consider the other sentences. Therefore, we conclude that the district court abused its discretion in prohibiting Barlow from making that argument to the jury. *See Collier v. State*, 101 Nev. 473, 481-82, 705 P.2d 1126, 1131-32 (1985) (explaining that the district court abused its discretion by placing undue limits on the argument of counsel); *cf. Lloyd v. State*, 94 Nev. 167, 169, 576 P.2d 740, 742 (1978) ("[I]t is improper for an attorney to argue legal theories to a jury when the jury has not been instructed on those theories.").

In *Evans*, this court set forth a jury instruction for use in capital penalty hearings. 117 Nev. at 635-36, 28 P.3d at 516-17. That instruction provides, in part: "if at least one of you determines that the mitigating circumstances outweigh the aggravating, the defendant is not eligible for a death sentence," and, if the jury makes that determination, they must then "consider all three types of evidence in determining a sentence other than death." *Id.* at 636, 28 P.3d at 517. While the *Evans* instruction primarily addresses the jury's consideration of evidence during deliberations, it also provides guidance about the steps the jury must follow before imposing a sentence. *Id.* at 635-36, 28 P.3d at 516-17.

The *Evans* instruction accurately reflects the statutory scheme for capital penalty hearings. Under NRS 175.554(1), the district court must instruct the jury on the aggravating and mitigating circumstances alleged by the parties. The jury is charged to first determine unanimously if the State has proved at least one aggravating circumstance beyond a reasonable doubt. NRS 175.554(2)(a), (4). Next, each juror must individually determine whether any mitigating circumstances exist. NRS 175.554(2)(b); *see also Jimenez v. State*, 112 Nev. 610, 624, 918 P.2d 687, 696 (1996) ("There [is] no constraint on the right of individual jurors to find mitigators, such as a requirement of unanimity or proof by a preponderance of the evidence or any other standard."). The jurors then weigh the aggravating and mitigating circumstances on their individual moral scales as part of "the selection phase of the capital sentencing process . . . to determine what penalty shall be imposed." *Lisle*, 131 Nev. at 366, 351 P.3d at 732 (internal quotation marks omitted); *see also Jeremias v. State*, 134 Nev. 46, 58-59, 412 P.3d 43, 54 (2018) (reaffirming that weighing the aggravating and

mitigating circumstances is part of the selection phase, which does not require proof beyond a reasonable doubt). If the jurors unanimously agree that there are no mitigating circumstances sufficient to outweigh the aggravating circumstances, they may impose a death sentence, NRS 175.554(4), but they are not obligated to do so, *Bennett v. State*, 111 Nev. 1099, 1110, 901 P.2d 676, 683 (1995) (observing that even if jurors unanimously find there are no mitigating circumstances sufficient to outweigh the aggravating circumstances, they "still ha[ve] the discretion to return a penalty other than death"). In contrast, if the jurors do not unanimously agree that there are no mitigating circumstances sufficient to outweigh the aggravating circumstances, they cannot impose a death sentence. NRS 200.030(4)(a). In other words, if even one juror determines there are mitigating circumstances sufficient to outweigh the aggravating circumstances, the death penalty is no longer an option. *See Bennett*, 111 Nev. at 1110, 901 P.2d at 683 ("[T]he death penalty is only a sentencing *option* if, after balancing and evaluating the aggravating and mitigating circumstances, the former are found to outweigh the latter.") *see also Rippo v. State*, 122 Nev. 1086, 1095, 146 P.3d 279, 285 (2006) (disapproving of a jury instruction that "implied that jurors had to agree unanimously that mitigating circumstances outweigh aggravating circumstances, when actually a jury's finding of mitigating circumstances in a capital penalty hearing does not have to be unanimous" (internal quotation marks omitted)); *Servin v. State*, 117 Nev. 775, 786, 32 P.3d 1277, 1285 (2001) (providing that if the jurors find the defendant not eligible for the death

penalty, they "may consider 'other matter' evidence under NRS 175.552 in deciding on the appropriate sentence"). But in those circumstances, the jury can still impose a lesser sentence.[3] *See* NRS 200.030(4)(b). A hung jury occurs only when the jury cannot unanimously agree on the sentence to be imposed. *See* NRS 175.556(1) (providing the procedure in a capital case when a jury cannot render a unanimous verdict as to the sentence to be imposed). Accordingly, the district court abused its discretion by prohibiting Barlow from making this argument regarding the weighing determination.[4] In this case, the district court correctly instructed the jury before deliberations began, and the jury unanimously found that the

---

[3]To the extent the State asserts that this interpretation of the *Evans* instruction permits a single juror to usurp the process by announcing at the start of deliberations that he or she believes the mitigating circumstances are sufficient to outweigh the aggravating, thus foreclosing any further discussion, we do not share that concern. The *Evans* instruction lays out the process the jury must follow in considering the evidence presented at the penalty phase. Following the process set forth in that instruction, reasonable jurors would understand that the weighing decision is made only after full, good faith deliberations as to the existence of aggravating and mitigating circumstances. *See Evans*, 117 Nev. at 635-36, 28 P.3d at 516-17; *see also* NRS 175.111 (requiring jurors to swear to "truly try" a case and return "a true verdict"); *Summers v. State*, 122 Nev. 1326, 1333, 148 P.3d 778, 783 (2006) (providing that "this court generally presumes that juries follow district court orders and instructions").

[4]To the extent Barlow contends the district court erred by denying his request to amend the non-death verdict forms to reflect the *Evans* language, we discern no abuse of discretion because the verdict must include a weighing determination only when the jury imposes a death sentence. *See* NRS 175.554(4). But given the technical and precise nature of the capital sentencing process, we provide a verdict form in an appendix to this opinion. Using this verdict form in future capital penalty hearings will aid the jurors and provide a clear record that they followed the necessary steps in determining the appropriate sentence.

aggravating circumstances outweighed the mitigating circumstances. *See Leonard v. State*, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001) (recognizing that jurors are presumed to follow their instructions). Therefore, we conclude that the error was harmless, *see* NRS 178.598, but, as discussed below, contributed to the cumulative error during the penalty hearing.

*Prosecutorial misconduct*

Barlow argues that prosecutorial misconduct during the penalty phase warrants reversal. In reviewing claims of prosecutorial misconduct, this court must determine whether the prosecutor's conduct was improper and, if so, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). If the error was preserved, reversal is not warranted where the misconduct is harmless. *Id.* at 1189, 196 P.3d 477. Misconduct of a constitutional nature does not warrant reversal if it is harmless beyond a reasonable doubt. *Id.* at 1189, 196 P.3d at 476. And errors of a nonconstitutional nature require reversal "only if the error substantially affects the jury's verdict." *Id.*

Barlow challenges the prosecutor's argument that had Barlow killed only Woods, a life sentence might be appropriate but "if you decide that, what justice does Donnie Cobb get?" After Barlow objected, the prosecutor defended his argument: "I said, if there had been only one victim in this case" then "your verdict would have been life without. But because there's two, there's got to be more."

We conclude that the prosecutor's comments improperly "suggest that justice requires a death sentence because the defendant killed more than one person." *Jeremias*, 134 Nev. at 57, 412 P.3d at 53. The prosecutor implicitly argued that Barlow deserved the death penalty

 

because he killed two people by arguing that a sentence of life without the possibility of parole might be appropriate if Barlow only killed Woods but was inappropriate because he also killed Cobb. We conclude that implication is just as improper as an explicit argument that Barlow deserved the death penalty simply because he killed two people. While we believe the prosecutor's comment was improper, the prosecutor also told the jury that the State would respect whatever verdict the jury rendered and that it would be "fine" if the jury decided Barlow did not deserve the death penalty, and the district court instructed the jury that the law never requires a death sentence. Thus, we conclude this error is harmless after considering the remark in context.[5] *See Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004) ("[S]tatements should be considered in context, and a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." (internal quotation marks omitted)). However, as discussed below, the prosecutor's improper argument contributed to the cumulative error during the penalty hearing.

---

[5]Barlow also ascribes misconduct to the prosecutor (1) misstating the definition of mitigating circumstances, (2) arguing for imposition of the death penalty because Barlow should not be allowed to mistreat prison staff, (3) comparing him to his sister, and (4) asking the jurors to perform their duty. Having reviewed each alleged instance in context, we discern no misconduct. *See Burnside v. State*, 131 Nev. 371, 403-04, 352 P.3d 627, 649-50 (2015) (concluding that a prosecutor did not make improper comments after considering them in context); *Hernandez v. State*, 118 Nev. 513, 526, 50 P.3d 1100, 1109 (2002) (finding no misconduct where "the prosecutor was fairly responding to an earlier contention by defense counsel").

*Great-risk-of-death-to-more-than-one-person aggravating circumstance*

Barlow argues that the great-risk-of-death-to-more-than-one-person aggravating circumstance under NRS 200.033(3) is invalid for two reasons: the State did not provide sufficient notice and insufficient evidence supports it.

*Inadequate notice of the State's alternative theory*

SCR 250(4)(c) provides that a notice of intent to seek the death penalty "must allege all aggravating circumstances which the state intends to prove and allege with specificity the facts on which the state will rely to prove each aggravating circumstance." In other words, "a defendant should not have to gather facts to deduce the State's theory for an aggravating circumstance; the supporting facts must be stated directly in the notice itself." *Nunnery v. State*, 127 Nev. 749, 779, 263 P.3d 235, 255 (2011).

The State's notice of intent to seek the death penalty alleged that Barlow knowingly created a great risk of death to more than one person based on the close proximity of the victims to one another when he shot them. While the State argued that theory at trial, it also argued that Barlow created a great risk of death to more than one person because a bullet went through a wall, out the window of an adjoining apartment, and into a public area. But the State never alleged in the notice that it would rely on the bullet exiting the apartment and the resulting risk of death to other residents to prove this aggravating circumstance.

The State asserts that this case is similar to *Nunnery* where this court found the notice of intent to seek the death penalty contained sufficient detail for the great-risk-of-death aggravating circumstance. The State's reliance on *Nunnery* is misplaced. Unlike the notice in *Nunnery* that

alleged "that the [great-risk-of-death] aggravator was based on the crimes committed by the defendant in a location 'which the public has access to and which several citizens are located nearby,'" 127 Nev. at 780, 263 P.3d at 256, the notice in this case made no mention of the bullet entering a public area or that other persons were in that area. Accordingly, because the State did not provide adequate notice of the public-area theory, the State improperly argued those facts in support of the great-risk-of-death aggravating circumstance. *See Hidalgo v. Eighth Judicial Dist. Court*, 124 Nev. 330, 339, 184 P.3d 369, 376 (2008) (explaining that a notice of intent to seek the death penalty functions primarily "to provide the defendant with notice of what he must defend against at trial and a death penalty hearing"). While we find the presentation of the unnoticed theory improper, the State alleged six aggravating circumstances and only mentioned the public-area theory briefly when describing the evidence in aggravation. Thus, the brief remarks on the unnoticed theory were harmless beyond a reasonable doubt. *See Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005) (recognizing that a prosecutor's improper comments that are "merely passing in nature" are harmless beyond a reasonable doubt). But again, they contributed to cumulative error during the penalty hearing.

*Sufficiency of the evidence*

Next, Barlow contends that insufficient evidence supports the great-risk-of-death aggravating circumstance. We review the record to determine whether evidence supports the jury's finding of an aggravating circumstance beyond a reasonable doubt. *Leslie v. State*, 114 Nev. 8, 20, 952 P.2d 966, 975 (1998). Having concluded that the State failed to adequately notice its public-area theory, we look only to the evidence supporting the theory the State did include in the notice of intent to seek the death penalty.

SUPREME COURT
OF
NEVADA

(O) 1947A

12

NRS 200.033(3) provides that first-degree murder is aggravated if it "was committed by a person who knowingly created a great risk of death to more than one person by means of a weapon, device or course of action which would normally be hazardous to the lives of more than one person." This court has concluded that the great-risk-of-death aggravating circumstance includes "a 'course of action' consisting of two intentional shootings closely related in time and place," *Hogan v. Warden*, 109 Nev. 952, 957, 860 P.2d 710, 714 (1993) (quoting *Hogan v. State*, 103 Nev. 21, 24, 732 P.2d 422, 424 (1987)) (rejecting challenge to great-risk-of-death aggravating circumstance where the defendant shot his female companion and her daughter but only one of them died), even when only the deceased victims were put at risk by that course of action, *Flanagan v. State*, 112 Nev. 1409, 1420-21, 930 P.2d 691, 698-99 (1996) (upholding great-risk-of-death aggravating circumstance where defendants shot and killed two people in a home with no one else present). But in *Flanagan*, we suggested that the great-risk-of-death aggravating circumstance no longer applies in the latter circumstance for murders committed after October 1, 1993, given the Legislature's adoption of the multiple-murder aggravating circumstance in 1993. 112 Nev. at 1421, 930 P.2d at 699. Specifically, we explained that the amendment, which provided that first-degree murder is aggravated if the defendant "has, in the immediate proceeding, been convicted of more than one offense of murder in the first or second degree," NRS 200.033(12), "apparently requires that for murders committed after October 1, 1993, the aggravator set forth in NRS 200.033(12), rather than the one in NRS 200.033(3), be applied to cases such as this one" where the defendant's

course of action created a great risk of death only to the murder victims, *Flanagan*, 112 Nev. at 1421, 930 P.2d at 699. Thus, absent evidence that Barlow put other people at risk, the great-risk-of-death aggravating circumstance should not have been applied in this case. *See Leslie*, 114 Nev. at 21-22, 952 P.2d at 975-76 (concluding that the State did not prove defendant knowingly created a great risk of death to others because no evidence showed defendant knew other people were in a room where a bullet entered through the wall); *Moran v. State*, 103 Nev. 138, 142, 734 P.2d 712, 714 (1987) (holding that aggravating circumstance did not apply where no other persons were in the apartment, no neighbor was at immediate risk of death, and the defendant was not aware of any other person within close proximity when he shot the victim).

The two murdered victims being near each other when shot by Barlow constitutes the only properly noticed evidence. Therefore, we conclude that the State did not present sufficient evidence to support the jury's finding of the great-risk-of-death aggravating circumstance beyond a reasonable doubt.[6] However, "[a] death sentence based in part on an invalid aggravator may be upheld either by reweighing the aggravating and mitigating evidence or conducting a harmless-error review." *Archanian v. State*, 122 Nev. 1019, 1040, 145 P.3d 1008, 1023 (2006).

Here, we conclude the error in presenting the invalid aggravating circumstance was harmless beyond a reasonable doubt. Barlow did not contest that the State proved five other aggravating

---

[6]Having found that the State did not present sufficient evidence to prove this aggravating circumstance, we need not consider Barlow's claim that it is duplicative of the multiple-murder aggravating circumstance under NRS 200.033(12).

circumstances. Each of those aggravating circumstances was more compelling than the invalid aggravating circumstance: Barlow was convicted in the immediate proceeding of more than one offense of murder, the murders were committed during a home invasion or burglary, and Barlow had been convicted of three violent felonies—assault with the use of a deadly weapon in the instant case, a prior conviction for attempting to murder Woods, and a prior conviction for breaking into an apartment and shooting his ex-girlfriend's new boyfriend. Accordingly, the invalid aggravating circumstance did not constitute a significant part of the State's case. *Cf. State v. Haberstroh*, 119 Nev. 173, 184, 69 P.3d 676, 683 (2003) (providing that the prosecutor emphasizing an invalid aggravating circumstance caused "concern that this argument likely induced the jurors to rest their sentence to a significant degree on the invalid aggravator"). And the jurors found only three mitigating circumstances—Barlow received an honorable military discharge, he sought help for mental health, and his daughters' love. Thus, we conclude beyond a reasonable doubt that, absent the invalid aggravating circumstance, the jury still would have found the mitigating circumstances were insufficient to outweigh the aggravating circumstances. *See Archanian*, 122 Nev. at 1040-41, 145 P.3d at 1023; *see also Clemons v. Mississippi*, 494 U.S. 738, 750 (1990) (observing "nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence"). Because the invalid aggravating circumstance did not affect the jury's sentencing determination, the error was harmless, but we further conclude that it contributed to the cumulative error in the penalty hearing.

 

*Cumulative error in the penalty phase*

Barlow argues that, even if harmless individually, cumulatively the errors during the penalty phase warrant relief. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Butler v. State*, 120 Nev. 879, 900, 102 P.3d 71, 85-86 (2004) (internal quotation marks omitted) (discussing cumulative error in appellant's penalty hearing). Generally, when considering a cumulative error claim, we look to the nature and number of errors, the evidence presented, and the gravity of the consequences a defendant faces. *See Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (discussing cumulative error).

Here, the following errors occurred: the district court improperly prohibited Barlow from making an important and legally accurate argument regarding the jury's deliberative process, the prosecutor improperly implied to the jury that a life sentence may have been appropriate if Barlow had only killed Woods but was inappropriate because he also killed Cobb, and the invalid great-risk-of-death aggravating circumstance and the related improper argument. And Barlow faced the gravest consequence—the death penalty. Individually, each of these errors was harmless, but we consider their effect collectively on the jury's decision to impose the death penalty. Barlow did not contest that the State proved multiple aggravating circumstances. Instead, he focused his defense on mercy and compassion. Thus, the district court erroneously prohibiting Barlow from making a legally valid argument that appealed to the individual jurors' ability to bestow mercy—in conjunction with the prosecutor's improper argument—creates a likelihood that Barlow was prejudiced. Viewed together, we conclude that the cumulative effect of these errors deprived Barlow of a fair penalty hearing. Therefore, we

SUPREME COURT
OF
NEVADA

(O) 1947A

16

reverse the judgment of conviction as to the death sentences and remand for a new penalty hearing. Given this conclusion, we need not review Barlow's death sentences under NRS 177.055.[7]

*Guilt phase claims*

*Jury selection*

Barlow argues that the jury selection process was unconstitutional based on the district court limiting his questioning, denying his objection to the State's use of its peremptory challenges, and denying his for-cause challenge.

First, Barlow argues that the district court improperly prevented him from "life qualifying" the prospective jurors. The district court proscribed a single question about whether the prospective jurors would impose death sentences because the case involved two victims. We conclude it was not improper to disallow questions aimed at acquiring information as to "how a potential juror would vote during the penalty phase of the trial" because such questions go "well beyond determining whether a potential juror would be able to apply the law to the facts of the

---

[7]Barlow also argues that the death penalty is unconstitutional and the district court admitted evidence during the penalty hearing in violation of his confrontation rights. We have considered these claims and conclude they lack merit and Barlow has not presented any persuasive reason to overrule this court's precedent. *See Belcher v. State*, 136 Nev. 261, 278, 464 P.3d 1013, 1031 (2020) (listing cases that have rejected similar challenges to the constitutionality of the death penalty); *Summers v. State*, 122 Nev. 1326, 1333, 148 P.3d 778, 783 (2006) (providing that the Sixth Amendment right to confrontation does not apply to capital sentencing hearings); *see also Armenta-Carpio v. State*, 129 Nev. 531, 535, 306 P.3d 395, 398 (2013) ("Under the doctrine of stare decisis, we will not overturn precedent absent compelling reasons for so doing." (internal quotation marks and alterations omitted)).

SUPREME COURT
OF
NEVADA

(O) 1947A

case." *Witter v. State*, 112 Nev. 908, 915, 921 P.2d 886, 892 (1996), *abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 776 n.12, 263 P.3d 235, 253 n.12 (2011). And the district court did not otherwise prohibit questions about whether the prospective jurors could consider all the aggravating and mitigating evidence, all four potential penalties, and whether there were circumstances where first-degree murder would or would not warrant the death penalty. Therefore, the district court did not abuse its discretion. *See* NRS 175.031 (providing that the district court shall allow supplemental examination of potential jurors "as the court deems proper"); *Johnson v. State*, 122 Nev. 1344, 1354-55, 148 P.3d 767, 774 (2006) (providing that conducting voir dire "rests within the sound discretion of the district court, whose decision will be given considerable deference by this court").

Next, pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), Barlow objected to the State's use of four peremptory challenges to strike one African-American and three Hispanic veniremembers. The district court found that Barlow had not satisfied the first *Batson* step (prima facie showing that the peremptory challenges were based on race) and overruled the objection. *See Cooper v. State*, 134 Nev. 860, 861, 432 P.3d 202, 204 (2018) (discussing the three-step *Batson* test). We agree that Barlow did not meet his burden. Other than the fact that the State used four peremptory challenges to remove members of two cognizable groups, Barlow did not point to anything to show that the peremptory challenges were based on race. Merely identifying minority veniremembers struck by the State does not meet the burden of showing an inference of

SUPREME COURT
OF
NEVADA

(O) 1947A

18

discriminatory purpose.[8] *See id.* at 862, 432 P.3d at 205 ("The question is whether there is evidence, other than the fact that a challenge was used to strike a member of a cognizable group, establishing an inference of discriminatory purpose to satisfy the burden of this first step."). Therefore, the district court did not clearly err in denying Barlow's *Batson* objection. *See id.* at 863, 432 P.3d at 205 (reviewing a district court's resolution of a *Batson* objection at the first step for clear error).

Finally, Barlow argues that the district court improperly denied his for-cause challenge of a prospective juror based on his inability to consider childhood evidence in mitigation. We discern no error. The prospective juror stated that he could be fair and impartial and was willing to consider everything presented in aggravation and mitigation. Reviewing the entirety of the challenged prospective juror's responses during voir dire, the record does not show he exhibited any bias or unwillingness to consider the evidence presented in mitigation. Therefore, we conclude that the district court did not abuse its discretion. *See Browning v. State*, 124 Nev. 517, 530, 188 P.3d 60, 69 (2008) (providing that "[g]reat deference is afforded to the district court in ruling on challenges for cause"); *see also* NRS 175.036 (providing that a juror should be excused for cause when voir dire reveals information "which would prevent the juror from adjudicating the facts fairly").

---

[8]We decline Barlow's invitation to undertake comparative juror analysis as he did not raise this argument below, *see Snyder v. Louisiana*, 552 U.S. 472, 483 (2008) (the Supreme Court has "recognize[d] that a retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial"), and he failed to make a prime facie case of discrimination, *cf. Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) (stating that comparative juror analysis may be considered at *Batson*'s third step).

*Expert testimony*

Barlow argues that the district court erred by allowing an unqualified expert to testify about firearms and toolmark identification. To testify as an expert under NRS 50.275, the witness must be qualified to give specialized testimony, the testimony must assist the jury, and the testimony must be limited to the scope of the expert's knowledge. *Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008). "Whether expert testimony will be admitted, as well as whether a witness is qualified to be an expert, is within the district court's discretion, and this court will not disturb that decision absent a clear abuse of discretion." *Mulder v. State*, 116 Nev. 1, 12-13, 992 P.2d 845, 852 (2000).

Based on the record, we conclude the district court did not abuse its discretion in admitting the expert's testimony. First, the witness qualified as an expert to testify about firearm and toolmark comparison. The witness had ample experience and technical knowledge in the field. While Barlow claims that the witness lacked knowledge of scientific standards, under NRS 50.275 an expert is someone with special knowledge, skill, or experience; thus, a forensic analyst's knowledge and experience about firearm and toolmark analysis is sufficient. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (explaining that the federal analog to NRS 50.275 "makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge"). Second, the witness provided testimony that assisted the jury and was within the scope of her expertise. Specifically, after conducting a microscopic comparison of the casings, the witness determined that the firearm recovered from Barlow's vehicle fired the bullet casings found at the scene of the murders. Finally, Barlow had the opportunity to attack the witness's credibility and methodology during his extensive cross-examination. Thus, it was for the

 

jury to evaluate and weigh the testimony. *See McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) ("The established rule is that it is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses."); *Allen v. State*, 99 Nev. 485, 488, 665 P.2d 238, 240 (1983) ("Expert testimony is not binding on the trier of fact; jurors can either accept or reject the testimony as they see fit."). And although Barlow had sufficient notice of the testimony to retain his own expert to testify at trial, he did not do so. *Cf. Turner v. State*, 136 Nev. 545, 554, 473 P.3d 438, 448 (2020) (providing that unnoticed expert testimony "prevented [the defense] from preparing for cross-examination" and consulting or retaining an expert for rebuttal purposes).

*Prosecutorial misconduct*

Barlow contends that the prosecutor improperly argued that Barlow saved the final bullet for the headshot to Woods because no evidence supported this comment. We agree but conclude the error was harmless. *See Miller v. State*, 121 Nev. 92, 100, 110 P.3d 53, 59 (2005) ("A prosecutor may not argue facts or inferences not supported by the evidence." (internal quotation marks omitted)). After the district court sustained Barlow's objection, the prosecutor conceded that the medical examiner could not determine the sequence of the gunshots and asked the jury to look at the physical evidence. Moreover, the State presented overwhelming evidence of Barlow's guilt, including testimony about his earlier confrontation with the victims, the discovery of a handgun in Barlow's vehicle with his fingerprint and DNA, and the expert testimony that the weapon fired the spent casings found at the crime scene. Thus, we conclude that the comment did not have a substantial effect on the guilt phase verdict. *See King v. State*, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000) (providing that

prosecutorial misconduct may be harmless where there is overwhelming evidence of guilt).

Barlow also argues that the prosecutor improperly commented on his right to remain silent by asserting at the end of closing argument that "there's at least one person in this room who knows who executed Donnie Cobb and Danielle Woods." Barlow did not object at trial, therefore, we review for plain error. *Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005). "It is well settled that the prosecution is forbidden at trial to comment upon an accused's election to remain silent following his arrest . . . ." *Morris v. State*, 112 Nev. 260, 263, 913 P.2d 1264, 1267 (1996) (internal quotation marks omitted). However, in *Taylor v. State*, this court considered a similar comment and found no error. 132 Nev. 309, 325-26, 371 P.3d 1036, 1047 (2016). While the prosecutor's isolated remark indirectly touched upon Barlow's decision not to testify, it tracks with the comment in *Taylor*. Therefore, we conclude that Barlow has not shown plain error, which must be "clear under current law from a casual inspection of the record." *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018); *see also Coleman v. State*, 111 Nev. 657, 665, 895 P.2d 653, 658 (1995) (considering "the frequency and intensity of the references to" a defendant's silence when determining if reversal is warranted).

*Jury instructions*

Barlow argues that the district court erroneously instructed the jury. Barlow first contends that the burglarous-intent instruction unconstitutionally shifted the burden of proof by allowing a finding of guilt without the State proving intent beyond a reasonable doubt. We disagree because the instruction accurately reflects NRS 205.065, and we have consistently upheld the statute's constitutionality. *See, e.g., Redeford v. State*, 93 Nev. 649, 653-54, 572 P.2d 219, 221-22 (1977) (explaining that "an

inference of criminal intent logically flows from the fact of showing unlawful entry"); *White v. State*, 83 Nev. 292, 296, 429 P.2d 55, 57 (1967) ("There is clearly rational connection between the fact proven, i.e., unlawful entry, and the presumption. It is clear that the [L]egislature has the power to establish inferences from facts proven, provided there is such rational connection."). Barlow also contends that the state-of-mind and intent-to-kill instructions misled the jury. The instructions told the jury that the State is not required to present direct evidence to prove Barlow's state of mind and the jury may infer his state of mind from the circumstances proved at trial, including the use of a deadly weapon. We discern no error, as the instructions correctly state Nevada law. *See Grant v. State*, 117 Nev. 427, 435, 24 P.3d 761, 766 (2001) ("Intent need not be proven by direct evidence but can be inferred from conduct and circumstantial evidence."); *State v. Hall*, 54 Nev. 213, 240, 13 P.2d 624, 632 (1932) (approving the same instruction challenged here that stated "[t]he intention [to kill] may be ascertained or deduced from the facts and circumstances of the killing such as the use of a weapon calculated to produce death, the manner of its use, and the attendant circumstances characterizing the act"). Therefore, the district court did not abuse its discretion in instructing the jury. *See Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) (providing that we review a district court's decision to give or refuse a jury instruction for an abuse of discretion or judicial error); *see also Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007) (whether an instruction correctly states the law presents a legal question that is reviewed de novo).

*Cumulative error in the guilt phase*

Barlow argues that cumulative error during the guilt phase warrants relief. Because we discern only one error, there is nothing to cumulate. *See Lipsitz v. State*, 135 Nev. 131, 140 n.2, 442 P.3d 138, 145 n.2

SUPREME COURT
OF
NEVADA

(O) 1947A

23

(2019) (concluding that there were no errors to cumulate when the court found only a single error).

## CONCLUSION

Having considered all of Barlow's guilt phase claims, we conclude no relief is warranted as to the guilt phase and therefore affirm the judgment of conviction in part. Due to cumulative error during the penalty phase of trial, we reverse the judgment of conviction as to the death sentences for first-degree murder with the use of a deadly weapon and remand for a new penalty hearing.

_____, J.
Silver

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

# APPENDIX
## *Barlow v. State*

## SPECIAL VERDICT

We, the Jury in the above-entitled case, having found the Defendant, [list name], guilty of Count [#] – [list the offense], find:

### *Section I: Aggravating Circumstances*

<u>Instructions</u>: Answer by checking "Yes" or "No" as to whether the jury unanimously finds that the State has proven the listed aggravating circumstances beyond a reasonable doubt.

1. [list individual aggravating circumstance]

☐ Yes

☐ No

[list any additional aggravating circumstance(s)]

<u>Instructions</u>: If you answered "No" to all of the above aggravating circumstances, proceed to Section V to record your verdict as to the sentence to be imposed for Count [#].

If you answered "Yes" to any of the above aggravating circumstances, proceed to Section II to record your findings as to any mitigating circumstances.

### *Section II: Mitigating Circumstances*

<u>Instructions</u>: Answer by checking "Yes" as to each mitigating circumstance that any individual juror has found and checking "No" as to any mitigating circumstance that no juror has found.

1. [list individual mitigating circumstance]

☐ Yes

☐ No

[list any additional mitigating circumstances and allow space for the jury to record any mitigating circumstances not listed]

Instructions: Proceed to Section III to record your findings as to the weighing of aggravating and mitigating circumstances.

### Section III: Weighing of Aggravating and Mitigating Circumstances

Instructions: Check only one of the following findings.

☐ We unanimously find there are no mitigating circumstances sufficient to outweigh the aggravating circumstance(s).

Instructions: Proceed to Section IV to record your verdict as to the sentence to be imposed for Count [#].

☐ At least one juror finds there are one or more mitigating circumstances sufficient to outweigh the aggravating circumstance(s).

Instructions: Proceed to Section V to record your verdict as to the sentence to be imposed for Count [#].

### Section IV: Sentencing Decision (death sentence available)

Instructions: Complete this section if the jury has unanimously determined in Section III above that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance(s). You must unanimously decide the sentence and the foreperson must sign and date the final verdict.

VERDICT

We, the Jury in the above-entitled case, having found the Defendant, [list name], guilty of Count [#] – [list the offense], and having unanimously found that at least one aggravating circumstance exists beyond a reasonable doubt and

Supreme Court
OF
Nevada

(O) 1947A

that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance(s), unanimously impose a sentence of:

☐ A definite term of 50 years in prison, with eligibility for parole beginning when a minimum of 20 years has been served.

☐ Life in prison with the possibility of parole.

☐ Life in prison without the possibility of parole.

☐ Death.

### Section V: Final Sentencing Decision (death sentence not available)

Instructions: Complete this section if (1) the jury determined in Section I above that the State did not prove any aggravating circumstance(s) beyond a reasonable doubt or (2) at least one juror found in Section III above that there are mitigating circumstances sufficient to outweigh the aggravating circumstance(s). If you have determined a sentence under Section IV, do not fill out this section. You must unanimously decide the sentence and the foreperson must sign and date the final verdict.

### VERDICT

We, the Jury in the above-entitled case, having found the Defendant, [list name], guilty of Count [#] – [list the offense], unanimously impose a sentence of:

☐ A definite term of 50 years in prison, with eligibility for parole beginning when a minimum of 20 years has been served.

☐ Life in prison with the possibility of parole.

☐ Life in prison without the possibility of parole.